Philadelphia Warehousing and Cold Storage, Petitioner *v.* Penrose Hallowell, Secretary of Agriculture and Commonwealth of Pennsylvania, Department of Agriculture, Respondents.

Argued March 11, 1985, before Judges CRAIG, COLINS and PALLADINO, sitting as a panel of three.

*Leonard J. Bucki,* for petitioner.

*Ellis M. Saull,* Deputy Attorney General, with him, *Allen C. Warshaw,* Chief Deputy Attorney General, Litigation Section, *John B. Hannum,* Chief Counsel, Department of Agriculture, and *LeRoy S. Zimmerman,* Attorney General, for respondents.

Opinion by Judge Colins, April 16, 1985:

Philadelphia Warehousing and Cold Storage (petitioner), as a taxpayer, filed this motion for summary judgment asking this Court to void the third year of a three year contract for warehousing services.

On March 4, 1983, the Department of Agriculture (Department) sent an invitation to bid to warehousemen to provide storage space for up to 261 schools and institutions participating in the Government Donated Agriculture Commodities Program. Bids were due on or before April 1, 1983 and the contract was to be awarded to the lowest qualified bidder. Petitioner, along with Rosenberger's Cold Storage, Inc. (Rosenberger's) and Blue Grass Distribution Center (Blue Grass), submitted timely bids for Distribution Area 17. The invitation divided the Commonwealth into numerous distribution areas. Distribution Area 17 covers Bucks, Chester, Delaware, Montgomery and Philadelphia counties.

Although not the lowest on all three items put out for bid, petitioner's bid was the lowest overall. After an inspection by the Department on April 21, 1983, of petitioner's facilities, however, this bid was not considered to be a qualified bid and was rejected. The Department contends that it found petitioner's facility, *by itself,* inadequate to handle all of the requirements for Area 17.

On May 7, 1983, notice was sent awarding the Area 17 contract to both Rosenberger's and Blue Grass. The Department claims that it decided to award the contract to two warehouses in order to give the recipient institutions, which had to bear transportation and storage costs, a choice of facilities.

On August 4, 1983, a reinspection of Philadelphia Warehousing's storage facility was conducted by the Department which found the warehouse to be suitable for the Program. On September 2, 1983, the Department accepted Philadelphia Warehousing's bid. Therefore, any of the three warehouses could have been used as the storage facility under the Program. On October 11, 1983, the Department sent a contract to Philadelphia Warehousing for signature. Philadelphia Warehousing notified the Department that the contract received contained incorrect price terms. The Department advised Philadelphia Warehousing to correct the price terms, initial the changes and return the amended contract. A corrected contract was not agreed upon. On June 8, 1984, the Department withdrew its offer to contract with Philadelphia Warehousing. On July 27, 1984, Philadelphia Warehousing sent a signed copy of the contract with the prices corrected and initialed. The Department refused to accept the submitted contract. The arrangement is now in its second year of operation (1984-85 school year).

Petitioner filed a complaint in August 1984, seeking to preliminarily enjoin the Department from awarding the contract.

On December 21, 1984, this Court denied preliminary relief because voiding the contract for the 1984-85 school year in progress could cause public and administrative disruptions which outweighed petitioner's possible right to relief. The Court, however, re-

served its decision on the validity of the bid award for the third school year, which has not yet begun. This is the issue presently before this Court.

This Court has consistently held that the requirement of competitive bidding for public contract awards serves the purpose of "inviting competition, to guard against favoritism, improvidence, extravagance, fraud, and corruption in the awarding of municipal contracts. . . ." *Conduit and Foundation Corporation v. City of Philadelphia,* 41 Pa. Commonwealth Ct. 641, 646, 401 A.2d 376, 379 (1979). Contravention of this explicit purpose, however, does not require a showing of bad faith. Even if the purpose of an award is to benefit the public (by benefitting the school system) as alleged here, private negotiations between the party awarding the contract and a successful bidder through which the terms and conditions of the competitive bids are modified or changed, are not in keeping with the purpose of competitive bidding. *American Totalisator Company, Inc. v. Seligman,* 34 Pa. Commonwealth Ct. 391, 384 A.2d 242 (1977), *aff'd,* 489 Pa. 568, 414 A.2d 1037 (1980).

In *Seligman,* this Court held that when an agency deviates from the requirements of competitive bidding by changing the terms of its proposal for bids, the proper procedure is to set aside all of the bids, readvertise, and secure another open competitive bidding so that all of the bidders would be on an equal footing.

The fact that petitioner was eventually offered to share in the contract is of no import. Once the Department deviated from its original proposal by segmenting one contract into two, it was bound to withdraw that proposal and begin the bidding process anew.

This Court, therefore, holds that the contract in its present form is violative of competitive bidding procedures and void to the extent that it remains unperformed. The third year of the contract, which pertains to the 1985-86 school year, must be withdrawn and readvertised for the solicitation of bids.

Petitioner's Motion for Summary Judgment is granted.

### ORDER

AND Now, April 16, 1985, Motion for Summary Judgment is hereby granted in favor of Philadelphia Warehousing and Cold Storage. The contract for Distribution Area 17 is declared void for 1985-86, the third year of a three-year contract. The Pennsylvania Department of Agriculture, Respondent, is ordered to readvertise and to accept new bids for the remaining year of the contract.