541 A.2d 822

Greek Orthodox Cathedral of Saint George and George Bonatsos, Appellants *v.* Redevelopment Authority of The City of Philadelphia and Vincent J. Fumo, Appellees.

Argued December 18, 1987, before Judges DOYLE and PALLADINO, and Senior Judge KALISH, sitting as a panel of three.

*Harold R. Berk, Harold R. Berk Associates,* for appellants.

*Gabriel L. I. Bevilacqua,* with him, *George C. Mc-Farland, Jr., Saul, Ewing, Remick, & Saul,* and *Robert J. Guerra,* of Counsel, for appellee, Redevelopment Authority of the City of Philadelphia.

*Robert J. Sugarman, Sugarman & Cohen,* for appellee, Vincent J. Fumo.

OPINION BY JUDGE DOYLE, May 2,. 1988:

Before us for consideration is an appeal by the Greek Orthodox Cathedral of Saint George and George Bonatsos (collectively, the Cathedral) from an order of the Court of Common Pleas of Philadelphia County which denied the Cathedral's request for an injunction prohibiting the Redevelopment Authority of Philadelphia (Authority) from entering into a contract with Vincent J. Fumo (Fumo). The contract arose as a result of Fumo's bid to rehabilitate certain property situated in Philadelphia. The trial court thoroughly set forth the relevant facts in this case and we shall quote its opinion, authored by Judge D'ALESSANDRO, at length:

> In May, 1985, the defendant, the Redevelopment Authority of the City of Philadelphia (RDA) issued an invitation for proposals ('Invitation') for the redevelopment of Parcels 60 and 60A, more commonly known as 255 and 253 South Ninth Street, in the Washington Square West, Unit No. 2 redevelopment area. Before addressing the details of the 'Invitation', which is the basis of the captioned lawsuit, a brief digression is warranted, to explain the general procedure by which the RDA invites competitive bidding and eventually arrives at selecting a developer. .
>
> Prior to issuing an invitation for proposal for the redevelopment of parcels, the RDA prepares a package available to all interested bidders containing the following information: minimum bid price, a copy of the urban renewal plan for the area, use controls, zoning classification, appraisal data, rehabilitation guidelines, deadline for submission, and other material information. The RDA then advertises in several local newspapers, inviting competitive bids from all inter-

ested parties for the purchase and development of these parcels. The information package, also known as the Invitation, is mailed to all individuals and developers who express an interest in the properties.

Prior to the date of submission, the RDA conducts tours of the properties and holds a pre-bid conference where questions are answered regarding the Invitation. A copy of the minutes of this meeting is subsequently sent to all attendees.

In order for a proposal to be considered it must meet the requirements of the Invitation. The bidder must provide all of the required submissions, including the development, plan of financing and the developer's qualifications. Further, the proposal must be submitted by the specified deadline.

After the deadline for submission, the RDA conducts a bid opening, where all the bids are given a preliminary check for completeness as to the major elements required by the Invitation. Those bids that comply are forwarded to the Technical Evaluation Committee[3] for further review. They examine each bid in greater detail and make their recommendation to the Board of the RDA. The Board then evaluates their recommendation and may, in certain cases, hear from representatives of interested parties at a public meeting. After a discussion, the Board then selects a proposal and notifies the successful bidder that his proposal has been selected. A contract is then prepared, especially tailored to the bid proposal, and submitted to the bidder for execution. The bidder has thirty (30) days within which to sign it, after which it is submitted to

the Planning Commission for their comment. It is then submitted to City Council for review and approval. (N.T. 2/4/86 pp. 33-60).

In the instant case, this procedure was adhered to by the RDA. The 'Invitation' identified the parcels to be purchased and developed as Parcel 60, a vacant lot, and Parcel 60A, an existing four-story building. The minimum bid price was $100,000 for both parcels. The land use category given for both was residential and further provided that:

'253 South 9th Street 60A—may be rehabilitated for a professional office on the first floor and a maximum of five residential units or the developer has the option of demolishing the rear wing and rehabilitating the structure for a professional office on the first floor and two residential units.

'255 South 9th Street 60—construction of a three story building with an allowable professional office on the first floor and a maximum of two residential units above it.

Rehabilitation specifications are attached for Parcel 60 "A" and Design criteria is attached for Parcel 60 but they do not constitute a required plan or treatment of the properties.' (Exhibit P3 p. 1).
The zoning classification for both properties was R-10 residential *(Id.)*.

Furthermore, all required architectural submissions are subject to:
'the permitted uses, restrictions, and controls of the Urban Renewal Plan, and rehabilitation specifications (if applicable).' *(Id.* at 8).
In fact, one of the criteria for evaluating the proposals was conformity with the Urban Re-

newal Plan. (*Id.* at 11), a copy of which was included in the 'Invitation' ('Attachment H').

Of particular controversy to this case is the property rehabilitation specifications for Parcel 60A and the controls for Parcel 60, known cumulatively as 'Attachment I'. Parcel 60A, the existing four-story building, the specifications provided, under the heading 'maximum number of units allowable', a permitted rehabilitation of 'Prof. office/5 Res.' with a zoning classification of 'R-10'. For Parcel 60, the vacant lot, the document spoke of controls, leaving it up to the developer to design an appropriate use for the land within the parameters of the Urban Renewal Plan. A number of these controls were binding, such as zoning, while others such as coverage, setback, height, and sight controls, were binding only if the developer chose to build on the lot. These rehabilitation specifications and controls did not constitute a required plan/treatment of the properties. However, all proposals had to comply with the Urban Renewal Plan for the area. (Exhibit P-3, p. 1; N.T. 2/4/86 pp. 93-101, 112-113).

Pursuant to the issuance of the 'Invitation', the RDA conducted a pre-bid meeting on May 6, 1985, for all interested bidders to answer any questions regarding the 'Invitation'. It was stated at that meeting, and subsequently reflected in the minutes, that the '. . . rehabilitation specifications for Parcel 60A and a design criteria [controls] for Parcel 60 . . . [did] not constitute a required plan or treatment of the properties'. (Exhibit P-4, pp. 1, 6).

In this case, the RDA received bids for the project from three bidders, the plaintiff, Nestor

Associates, and Vincent J. Fumo. The plaintiff, a non-profit organization, has been in the Washington Square West Area for approximately 65 years. In the past, they were selected by the RDA for the redevelopment of several parcels in the area. (N.T. 2/7/86 pp. 8-9) The bid they submitted, with the assistance of their architects, Stein and Associates, was for $100,000 and provided for rehabilitating Parcel 60A as a ground floor professional office with one studio and one two-bedroom apartment above it, and developing Parcel 60 as a professional office with one bedroom apartments on the second and third floors.

Vincent Fumo also submitted a bid for $100,000 and proposed to rehabilitate Parcel 60A as a single family home for himself, and Parcel 60, the vacant lot, as a garden. The third bidder bid by Nestor Associates was rejected as it offered $68,500 for Parcel 60A and exceeded the use control limitations. On January 14, 1986, the RDA notified Fumo of his selection as the designated redeveloper for both parcels.[5] (Footnotes omitted with the exception of footnotes 3 and 5.)

---

[3] The Technical Evaluation Committee includes representatives from the Philadelphia Housing Development Corporation, the City's Office of Community Development and Housing, the Department of Commerce, Philadelphia Industrial Development Corporation, the City Planning Commission staff, and the RDA staff. (N.T. 2/4/86 pp. 47-48)

[5] Prior to the selection of Fumo, the RDA received letters from local neighborhood groups

expressing a preference for the Fumo bid. It was common knowledge in the area that these groups opposed commercial or professional office rehabilitation of that block due to the high rental vacancy rate for these types of uses.

Upon learning of Fumo's selection by the Authority, the Cathedral brought the within lawsuit.[1] It is alleged that the bidding invitation was ambiguous and, in the alternative, that Fumo had not complied with the invitation. The court disagreed with both contentions and denied the injunctive relief; appeal to this Court followed.

On appeal, the Cathedral contends that the trial court erred when it determined that: (1) the invitation was not misleading; (2) the Authority did not change the terms of its proposal when it permitted Fumo to maintain a garden at 255 South Ninth Street; and (3) Fumo's bid was consistent with the invitation. Further, it is alleged that the trial court erred in excluding certain evidence.

We begin with the question of whether the invitation was vague, misleading or ambiguous. The trial court observed that the Cathedral is "not a novice participant in the bidding process" having established a land acquisition committee which successfully acquired, through Authority procedures, several parcels of land.

The Cathedral contends that confusion existed in the invitation because it indicated that design criteria were attached for Parcel 60 (the vacant lot), and said criteria discuss the specifications for a building on that lot. The

---

[1] These bidding procedures are the subject of a further lawsuit. *See Vincent Fumo v. Redevelopment Authority of the City of Philadelphia,* 115 Pa. Commonwealth Ct. 542, 541 A.2d 817 (1988).

Cathedral thus asserts, in essence, that when the invitation and its attachment are read *in pari materia* the conclusion must be that a bidder was *required* to place a building on lot 60. We do not agree inasmuch as the invitation itself clearly states that the design criteria "do not constitute a required plan or treatment of the properties."[2]

The Cathedral next contends that Fumo's bid should have been rejected because it did not comply with the invitation. We disagree. There is nothing in the invitation to indicate that the garden on Parcel 60 would be unacceptable. Again, we indicate that the design criteria were "not a required treatment for the properties." Because the garden is not prohibited in the invitation, we must conclude that the Authority did not change its terms by permitting Fumo to maintain a garden. Further, because a garden was not prohibited under the terms of the invitation, Fumo's bid was not inconsistent with the invitation. Thus, no rebidding is required here. *Cf., e.g., American Totalisator Co., Inc. v. Seligman,* 489 Pa. 568, 414 A.2d 1037 (1980) (where Commonwealth failed to abide by terms of its own bid proposal cancellation of contract was proper); *Philadelphia Warehousing and Cold Storage v. Hallowell,* 88 Pa. Commonwealth Ct. 574, 490 A.2d 955 (1985) (where Commonwealth deviated from original bid proposal by segmenting contracts, Commonwealth had to withdraw its proposal and begin the bidding anew).

---

[2] The Cathedral also asserts that the "design criteria" were not labeled as such on the attachment and this, too, was confusing. The trial court concluded that because only one document (Attachment I) referred to Parcel 60, no reasonable person would have been confused. We agree. Further, the trial court noted that the Cathedral had not even attempted to have any questions answered either at the pre-bid meeting to which it sent representatives or subsequently when it received the pre-bid meeting minutes which revealed that a building "may" be constructed on Parcel 60.

The Cathedral's other allegation of error pertains to the exclusion of certain evidence. The Cathedral attempted to introduce the testimony of a disappointed bidder who wished to testify that undisclosed individuals at the Authority had advised him that the Authority would not look favorably upon a proposal including a vacant lot. Proper objections were made to this testimony. The trial court, because it believed that the interpretation of the invitation was within *its* province, excluded this testimony as irrelevant. Further, it concluded that the testimony was both unreliable and hearsay because the individual could not identify the person with whom he spoke at the Authority. Our review of a trial court's ruling on evidentiary matters is highly circumscribed; absent clear abuse of discretion, such rulings will be sustained. *Schnitzer v. Commonwealth*, 85 Pa. Commonwealth Ct. 38, 480 A.2d 388 (1984). We agree that the within testimony constituted hearsay and, hence, was unreliable. Accordingly, we will not disturb the trial court's determination to exclude the evidence.

The trial court further excluded the testimony of various officials.[3] The Cathedral had wanted these officials to testify as to their own interpretations of the invitation. The trial court, however, ruled that it was the court's role to interpret the invitation and that permitting a multitude of individuals to testify as to their interpretations would not be helpful. We perceive no abuse of discretion in these rulings; accordingly, we shall not disturb them.

Having determined that there was no error committed by the trial court, its order is affirmed.

---

[3] The Cathedral attempted to call Richard Bazelon, Esquire, Chairman of the Board of the Authority, Jason Stump, an official with the Office of Housing in the City of Philadelphia and Anthony Beldecos, Esquire, a member of the Board and Land Acquisition Committee of the Cathedral.

ORDER

NOW, May 2, 1988, the order of the Court of Common Pleas of Philadelphia County in the above-captioned matter is hereby affirmed.

Judge COLINS did not participate in the decision in this case.

---

DISSENTING OPINION BY JUDGE PALLADINO:

I respectfully dissent. As stated in my dissent in *Fumo v. Redevelopment Authority of the City of Philadelphia,* 115 Pa. Commonwealth Ct. 542, 541 A.2d 817 (1988), no contract was formed between Fumo and the Authority. The Authority made a material change in the terms of the invitation to bid by adding a requirement that the contract contain a twenty-five (25) year deed restriction. When this occurred, the proper procedure was to set aside all bids and begin the bidding process anew. Therefore, the trial court erred in denying the Cathedral's request for an injunction prohibiting the Authority from entering into a contract with Fumo.