541 A.2d 817

Vincent J. Fumo *v.* Redevelopment Authority of the City of Philadelphia and Greek Orthodox Cathedral of Saint George. Greek Orthodox Cathedral of Saint George, Appellant.

Vincent J. Fumo *v.* Redevelopment Authority of the City of Philadelphia and Greek Orthodox Cathedral of Saint George and George Bonatsos. Redevelopment Authority of the City of Philadelphia, Appellant.

Vincent J. Fumo *v.* Redevelopment Authority of the City of Philadelphia and Greek Orthodox Cathedral of St. George and George Bonatsos. Redevelopment Authority of the City of Philadelphia, Appellant.

Vincent J. Fumo, *v.* Redevelopment Authority of the City of Philadelphia and Greek Orthodox Cathedral of Saint George. Greek Orthodox Cathedral of Saint George, Appellant.

Vincent J. Fumo, *v.* Redevelopment Authority of the City of Philadelphia and Greek Orthodox Cathedral of Saint George and George Bonatsos. Redevelopment Authority of the City of Philadelphia, Appellant.

Argued December 18, 1987, before Judges DOYLE and PALLADINO, and Senior Judge KALISH, sitting as a panel of three.

*Harold R. Berk, Harold R. Berk Associates,* for appellant, Greek Orthodox Cathedral of Saint George.

*Robert J. Sugarman,* with him, *Gabriel L. I. Bevilacqua, Sugarman. & Cohen,* for appellee, Vincent J. Fumo.

OPINION BY JUDGE DOYLE, May 2, 1988:

Before us for our consideration are various consolidated appeals arising out of an invitation to bid on two parcels of property situate in the City of Philadelphia. The two contiguous parcels located at 253 and 255 South Ninth Street in Philadelphia were offered up for bid by the Redevelopment Authority of the City of Philadelphia (Authority). The lot located at 253 South Ninth Street (lot 60A) contained a four-story commercial/residential building which was in a state of disrepair; the adjacent lot at 255 South Ninth Street (lot 60) had no structure on it. Three proposals were sub-

mitted to the Authority only two of which need concern
us here. Vincent J. Fumo (Fumo) proposed to rehabili-
tate the dilapidated building and turn it into a single
family residence and to turn the other parcel into a
landscaped garden. His long-range plans, which were
not included in his proposal, called for the razing of the
existing structure and the building of a new single fami-
ly residence combining the two properties. The other
bidder, the Greek Orthodox Cathedral of Saint George
(Cathedral) submitted a proposal which called for the
development of each parcel as a professional office
building with apartments above each building. Appar-
ently, certain city residents wanted 255 South Ninth
Street to be converted into a landscaped garden, and
they communicated their wishes to the Authority. Ulti-
mately, Fumo was awarded the bid by a resolution of
the Authority on January 8, 1986. The Authority, how-
ever, attempted to make the award conditional by
requiring a deed restriction which would have mandat-
ed that Fumo keep the garden intact for twenty-five
years. Fumo appealed the restriction to the common
pleas court. By order dated May 15, 1986, the court
preliminarily and permanently enjoined the Authority
from enforcing the restriction, directed the Authority to
honor the award to Fumo, and directed the parties to
consummate the contract. The court further denied the
Authority's motions for post-trial relief and a stay, by
order dated May 28, 1986; appeals to this Court from
the May 28 order followed.[1]

---

[1] The Authority appealed at No. 2037 C.D. 1986; the
Cathedral, as an intervening defendant, appealed at No. 2036 C.D.
1987. Ordinarily, these appeals would have had the effect of staying
any further action by the common pleas court. *See* Rule 1701 of the
Rules of Appellate Procedure, Pa. R.A.P. 1701. In this instance,
however, this Court entered an order on October 3, 1986, directing
the common pleas court to continue with the proceedings.

Subsequently, on remand from the common pleas court, the Authority, by a board resolution of June 13, 1986 tendered a second proposed contract to Fumo. In the second proposed contract, the twenty-five-year restriction had been reduced to ten years. Fumo again appealed to the common pleas court this time in the posture of a motion to enforce the court's May 15 order. That motion was granted by order dated April 2, 1987, and the Authority was directed to honor the award to Fumo. However, the April 2, 1987 order, although it enjoined the Authority from enforcing its ten-year restriction, also directed that the garden remain for *two* years. The Authority appealed that order to this Court as well.[2] Post-trial motions were filed by the Authority and the Cathedral and were denied by an order of court dated July 2, 1987. That order was also appealed by the Authority and the Cathedral;[3] it is significant that no appeal was taken by Fumo.[4]

Although the procedural history of this case is fairly complex, the issues which we must resolve on appeal are clear-cut. First, we must decide whether the Authority's resolution, which purported to award the bid to Fumo with the added condition, constituted an award of the bidding contract or merely a counter offer. Resolution of the question is a necessary prerequisite to determining what relief, if any, is appropriate.

The Authority and the Cathedral contend that it was a conditional award, because it varied the terms of

---

[2] The order was appealed at No. 1064 C.D. 1987.

[3] The Authority appealed at No. 2090 C.D. 1987; the Cathedral appealed at 2089 C.D. 1987.

[4] Fumo did file a cross-appeal from the May 28, 1986 court order (see footnote 1); that appeal was quashed, however, on October 3, 1986 on motion of the Authority because Fumo had not filed exceptions to the underlying trial court's order of May 15, 1986.

Fumo's proposal, and constituted a counter offer which Fumo rejected. They, thus, conclude that no contract ever materialized and, consequently, that Fumo is nothing more than a disappointed bidder who had no right to an award of the redevelopment contract. They further contend that Fumo's status as a taxpayer does not confer standing upon him to gain the relief he seeks, and that Fumo has no right to equitable relief because he is barred by the "clean hands" doctrine. Specifically, the Authority and Cathedral argue that because Fumo admitted at trial that his long-range plans for the property were different than those in the proposal, he committed a fraud on the public and the Authority. Further, the Authority argues that the common pleas court lacked the power to compel it to enter into a contract that was never intended and that it erred in substituting its discretion for that of the agency. Finally, both the Cathedral and the Authority argue that the only relief the trial court could have granted was to set aside all bids and remand to the Authority with instructions that it readvertise and start the bidding process anew.

We begin by deciding whether the Authority's resolution constituted an acceptance of Fumo's bid or a counter offer. We hold that it was the former. Case law establishes that in the context of public bidding it is the *award* which gives rise to the contract. *Muncy Area School District v. Gardner*, 91 Pa. Commonwealth Ct. 406, 497 A.2d 683 (1985). Further, once the award is made it cannot be recanted. *Francis v. Luitweiler*, 72 Pa. D. & C. 2d 582 (1975). Here, the Authority, by resolution, awarded the contract, but then attempted to attach a condition to it. It is undisputed that nothing in the invitation to bid required that a garden be maintained at 255 South Ninth Street; in fact, the Cathedral

has maintained in a companion lawsuit[5] that the invitation to bid required not a garden, but a structure. We hold that the attempt to attach the condition was beyond the Authority's power and, hence, of no effect. We believe that the Authority in considering the bid had two options; it could have rejected Fumo's proposal (and certainly in so doing it could have indicated why), *or* it could have accepted it. It chose the latter course, and since it did, we believe it could not then have attempted to impose as an afterthought conditions which it had failed to include in its invitation.[6]

_____

[5] *See Greek Orthodox Cathedral of Saint George v. Redevelopment Authority of the City of Philadelphia*, 115 Pa. Commonwealth Ct. 531, 541 A.2d 822 (1988).

[6] The opinion of the trial court filed with its order of May 15, 1986 contained the following findings:

14. No specific deed restriction was contained in the IFP; nor was there specified a limitation as to how long any particular use would have to be made of the parcel(s) by the selected redeveloper.

15. In the competitive bidding setting, it has been almost uniform practice of the Redevelopment Authority for at least 20 years, where the Authority intends to impose requirements, to state such requirements in the invitation for proposals; specifically, requirements for property uses or limitation on such uses following certificate of completion are expressly incorporated in the invitation for proposals.

16. It is contrary to redevelopment procedures accepted within the redevelopment field to publish an invitation for bids, and later add new and onerous changes diminishing the value of the property and imposing conditions not established in the invitation.

17. The Philadelphia Redevelopment Authority has not previously employed such a practice; the only case in which a condition requiring open space was added after the issuance of invitation of proposals in a bid case was one in which the Authority accepted a price lower than the minimum price, and imposed a condition by agreement at that time and in that context.

It has been held that when devising an invitation to bid, an authority must include all material matters in its invitation. *American Totalisator Co., Inc. v. Seligman,* 489 Pa. 568, 414 A.2d 1037 (1980). Further, valuative criteria cannot be altered once the bidding process is in motion. *Id; Philadelphia Warehousing and Cold Storage v. Hallowell,* 88 Pa. Commonwealth Ct. 574, 490 A.2d 955 (1985). Here, the Authority, by imposing a condition not in the invitation, committed an error similar to one involving a post-bid change in valuative criteria. While it did not actually alter the bidding criteria once the process had begun, it instead imposed a condition subsequent upon the successful bidder. This it could not do. Because we have determined that a contract was in fact consummated between Fumo and the City, we hold that the attempt to impose a subsequent condition was impermissible. It necessarily follows, then, that the trial court properly set aside the twenty-five-year and ten-year restrictions.

Therefore, the next question which arises is whether the two year court-imposed restriction may stand, *i.e.,* whether the trial court had the authority to impose such a restriction. Although principles of municipal law prohibit the substitution of judicial discretion for administrative discretion, *American Totalisator,* an authority's bidding process is subject to some judicial review. The trial court, in the absence of fraud, has a limited scope of review, but it may examine the Authority's decision to determine whether the Authority manifestly and flagrantly abused its discretion or acted arbitrarily. *Id.* The trial court struck the twenty-five year provision. On remand, the Authority then sought to impose a ten-year restriction. The trial court determined that by failing to comply with its May 15 order or by failing to exercise reasonably the deference it had been afforded by the trial court upon remand, the Authority had "forfeited

such deference." We interpret this statement to mean that the Authority, upon remand, acted in a manner which the trial court found to be arbitrary. We agree. Thus, we find that the trial court in rescuing the case from the throes of unbridled Authority actions acted properly. Further, the trial court went on to make findings as to what the intent of the parties was and concluded that the two-year restriction would serve to meet the concerns of both Fumo and the Authority. We do not view this as being beyond its equitable powers.

Furthermore, if we were to agree with Appellants' argument that the trial court "interfered with" the Authority's discretion in this instance by setting aside a twenty-five year deed restriction and then a ten-year deed restriction, and then by its own order foist upon the Authority and Fumo a two-year restriction, we would be compelled, absent any right of the Authority to impose *any* deed restriction at all, to set aside even the two-year period imposed by the court's order of April 2, 1987. This result, however, would be contrary to the relief Appellants seek and we will not, accordingly, reach a result not sought by them. Since Fumo did not appeal from that court order, and argued in his brief that the judgment of the common pleas court should be affirmed, we will leave intact the court's two-year restriction.

The Cathedral and Authority also argue that in imposing the restriction, the court reformed the contract and that such an equitable remedy is not warranted on the facts here because Fumo did not have "clean hands." The "clean hands" doctrine requires that the party seeking relief from the court have acted fairly and without fraud and deceit in the litigation at issue. *Shapiro v. Shapiro,* 415 Pa. 503, 204 A.2d 266 (1964). The Cathedral and the Authority contend that because Fumo did not disclose his long-range plans for the proposal in his

bid he lacks the "clean hands" which the grant of an equitable remedy requires. Even assuming, however, that Fumo intentionally concealed his long-term plans, (an assumption not borne out by the record) we can discern no fraud. The fact that after Fumo rehabilitated the property in accordance with his proposal and achieved a certificate of completion, he hoped to alter the property does not indicate fraud *as long as* he complies at all times with the applicable development plans and zoning ordinances. There is nothing to suggest that once a property has been rehabilitated it must remain that way for all time, permanent and unchanging. The Cathedral and Authority point to no future development by Fumo that would not be in accord with the applicable regulations and ordinances. Therefore, we hold that the Authority's and the Cathedral's contentions that Fumo committed an act of fraud are without merit.

Having concluded that the trial court acted properly in this matter, we shall affirm its' order.[7]

ORDER

NOW, May 2, 1988, the orders of the Court of Common Pleas in the above-captioned matter are hereby affirmed.

Judge COLINS did not participate in the decision in this case.

---

[7] Although the Cathedral and the Authority argue strenuously for a remand to the Authority for new bidding, we believe that that remedy is appropriate in situations where the valuative criteria were altered in mid-stream or where an unsuccessful bidder succeeds in showing the Authority erred or abused its discretion. *See American Totalisator; J.P. Mascaro & Sons, Inc. v. Township of Bristol*, 95 Pa. Commonwealth Ct. 376, 505 A.2d 1071 (1986). *Cf. Francis.* (proper remedy for successful bidder is award of contract).

552

DISSENTING OPINION BY JUDGE PALLADINO:

I respectfully dissent. As the majority correctly notes, we must first determine whether the Authority's Resolution constituted an acceptance of Fumo's bid or a counter-offer by the Authority. However, I must disagree with the majority's conclusion that the Resolution was an acceptance of Fumo's bid.

The Pennsylvania Supreme Court has held that a reply to an offer, though purporting to accept that offer, is not an acceptance but a counter-offer, where such reply adds qualifications or requires performance of conditions. *Hatalowich v. Redevelopment Authority of Monessen*, 454 Pa. 481, 312 A.2d 22 (1973); *Hedden v. Lupinsky*, 405 Pa. 609, 176 A.2d 406 (1962). In order for a contract to be formed, the acceptance of the offer must be absolute and identical with the terms of the offer. *Hedden*.

With the above principles in mind, an examination of the Authority's resolution demonstates that no contract was formed in this case.[1] Resolution No. 12,865 states:

> BE IT RESOLVED, By the Redevelopment Authority of the City of Philadlephia, that Vincent J. Fumo is hereby selected as the Redeveloper for 253 and 255 South 9th Street . . . and *approval is hereby given to the disposition contract provided that said contract contain a provision for a deed restriction that Parcel 60A (255 South 9th Street) be developed and maintained solely as a landscaped garden for a period of (25) years* from settlement. . . . (Emphasis added.)

The Authority's approval is thus conditioned upon the inclusion in the contract of a provision for a twenty-

---

[1] The parties do not dispute that Fumo offered to redevelop Parcel 60A (255 South 9th Street) as a landscaped garden.

five (25) year deed restriction. Clearly, the requirement that Fumo agree to a twenty-five (25) year deed restriction is a material alteration of the terms of the bid.[2] Alteration of the terms of an offer in any material respect is not an acceptance. *See Thomas A. Armbruster, Inc. v. Barron,* 341 Pa. Superior Ct. 409, 491 A.2d 882 (1985) (citing 1 A. Corbin, Corbin on Contracts §82 (1963)).

This court has held that the purpose of competitive bidding is to invite competition and to guard against favoritism and fraud. *See Conduit and Foundation Corporation v. City of Philadelphia,* 41 Pa. Commonwealth Ct. 641, 401 A.2d 376 (1979). Once it is determined that the Authority changed the terms of its proposal for bids, the proper procedure had to be the setting aside of all bids and beginning the bidding process anew. *Philadelphia Warehousing and Cold Storage v. Hallowell,* 88 Pa. Commonwealth Ct. 574, 490 A.2d 955 (1985). Accordingly, I would reverse.

The majority also addressed the issues of whether the trial court properly set aside the twenty-five (25) and ten (10) year deed restrictions and whether it was proper for the trial court to impose a two (2) year deed restriction. In view of my belief that no contract was ever formed between the Authority and Fumo, I do not address these issues.

---

[2] The twenty-five (25) year deed restriction was also noted in the Authority's letter to Fumo advising him that his bid had been selected.