581 A.2d 1009

**CITY OF PHILADELPHIA, Appellant,**

**v.**

**CANTEEN COMPANY, DIVISION OF TW SERVICES, INC., Appellee.**

Commonwealth Court of Pennsylvania.

Argued Sept. 11, 1990.

Decided Oct. 24, 1990.

576

Sherri Glantz Patchen, Chief Asst. City Sol., Philadelphia, for appellant.

Gregory M. Harvey, with him, Coleen M. Meehan, Morgan, Lewis & Bockius, Philadelphia, for appellee.

Before DOYLE and PALLADINO, JJ., and BARBIERI, Senior Judge.

PALLADINO, Judge.

The City of Philadelphia (City) appeals an order of the Court of Common Pleas of Philadelphia County (trial court) which permanently enjoined the City from revoking a contract awarded to Canteen Company (Canteen) and directed the City and Canteen to "proceed ... in accordance with the terms of that award letter and the other contract documents." We reverse.

The City solicited public bids for a five-year vending machine concession at the Philadelphia International Airport (concession). The Invitation to Bid directed that all bids must "offer to pay a guaranteed annual fee or 20% of the gross revenue derived from the concession whichever sum shall be greater.[1]"

Canteen submitted a bid with a guaranteed annual fee of $129,999. The bid included the condition that only 20% of revenues and not the guaranteed annual fee would be paid to the City during any period in which "sales are restricted from achieving normal levels" by "an Airport strike, or major airline strike, or act of God, or war or riot" (guaranteed fee exception).

On April 21, 1989, the Deputy Commissioner of the City Procurement Department sent Canteen a letter, accepting Canteen's bid. The letter did not make reference to the guaranteed fee exception, but rather stated that Canteen's bid was an offer "to pay the City of Philadelphia a guaran-

---

1. The Invitation to Bid also contained a fifteen-page document labeled "License for the Operation of a Vending Machine Concession," containing the remaining terms of the bid.

teed annual concession fee of $129,999 or 20% of the gross revenue derived from the concession, whichever amount shall be greater."

Thereafter, Canteen received a letter from the City Department of Commerce, Division of Aviation, dated April 26, 1989, directing Canteen "to proceed in accordance with your bid ... commencing on June 9, 1989." Canteen, thereafter, received a letter from a contract clerk within the City Law Department, dated May 10, 1989, which directed Canteen's President and Vice President to sign a formal contract, which was enclosed with the letter. Canteen alleges that it signed and returned the contract to the City. To commence operations, Canteen made several expenditures including the purchase of vending machines for $66,298.

On May 25, 1989, the Chief Assistant City Solicitor sent Canteen a notice that the City had accepted Canteen's bid in error. The letter stated that Canteen's bid was invalid because of the inclusion of the guaranteed fee exception. Thereafter, the City decided to solicit new bids.

Canteen filed a complaint in equity requesting a permanent injunction and a motion for a temporary restraining order (TRO) to enjoin the City from soliciting new bids and to permit Canteen to operate the concession. The trial court granted the TRO and concluded that, at the hearing on the TRO, Canteen "formally withdrew [the guaranteed fee exception] from its bid proposal." [2]

The trial court's opinion states that, it conducted a hearing during which the parties agreed that there were no material facts in dispute. The parties also agreed to treat the proceeding as a hearing on the merits of Canteen's request for a permanent injunction. The trial court concluded that an enforceable contract existed between Canteen and the City and that the dispute as to the guaranteed fee exception was moot because Canteen "withdrew" the exception from the bid. Accordingly, the trial court granted the permanent injunction.

---

2. *Canteen Company v. City of Philadelphia*, (No. 1335, June Term, Filed June 21, 1989) slip op. at 4.

On appeal to this court,[3] the City raises four issues: (1) whether the City could withdraw the award of the concession because it had not executed the contract as required by the City Home Rule Charter; (2) whether Canteen's bid was invalid because it deviated from the bid instructions; (3) whether Canteen could cure any deviation from the bid instructions by withdrawing the guaranteed annual fee exception from its bid; and (4) whether equitable relief was improperly awarded because Canteen has an adequate remedy at law.

■ As to the first issue, the City argues that the City Home Rule Charter requires that a "contract shall be in writing and shall be executed on behalf of the City by the Procurement Department but only after it has been approved as to form by the City Solicitor." 351 Pa.Code §§ 8.8–200 and 8.8–201. The City contends that because these procedures have not been followed, the trial court's conclusion that the City is contractually bound is an error of law. Consequently, the City asserts that the order permanently enjoining it from withdrawing the contract award is in error and must be vacated.

We are directed by the general procedural principles of the law of public contracts in *Wayne Crouse, Inc. v. School District of Borough of Braddock*, 341 Pa. 497, 19 A.2d 843 (1941); and *Chilli v. School District of City of McKeesport*, 334 Pa. 581, 6 A.2d 99 (1939). In *Wayne Crouse*, a bidder for a public contract was informed by a political subdivision that it had been awarded the contract. Before a formal written contract was executed, the political subdivision rescinded the award, based on its conclusion that the bidder's union problems would prevent it from completing the contract.

The bidder brought an action in assumpsit, contending that the political subdivision was bound by the award even

**3.** Our scope of review in an equity action is limited to a determination of whether findings of fact are supported by substantial evidence, whether an error of law has been made, or whether the trial court abused its discretion. *King v. Township of Leacock*, 122 Pa.Commonwealth Ct. 532, 552 A.2d 741 (1989).

though the execution of a written contract had not yet, occurred. The supreme court concluded that, because the Public School Code required the formal execution of a written contract, no contractual relationship had been created. The supreme court held that the award was merely a "preliminary declaration of intent to enter into a formal contract ... [which] did not in any way limit the [political subdivision's] freedom of future action." *Wayne Crouse*, 341 Pa. at 501, 19 A.2d at 844.

In *Chilli*, the bidder was awarded a public contract to construct a school building. No written contract was executed. The supreme court concluded: "If a written contract is necessary to bind the school board, as the Code seems to provide, this requirement must be met, and until it is actually executed, the board has discretionary power to revoke the award without liability to the school district." *Chilli*, 334 Pa. at 583, 6 A.2d at 100 (footnote omitted).

In the instant case, the City Home Rule Charter requires that public contracts for concessions be approved by the City Solicitor and executed by the Procurement Department. 351 Pa.Code §§ 8.8–200 and 8.8–201. Under the principles in *Wayne Crouse* and *Chilli*, the City was not bound by the acceptance of Canteen's bid until a contract was approved and executed, and could therefore withdraw the award without liability.

Canteen argues that the general principles in *Wayne Crouse*, and *Chilli* are limited by the subsequent case, *McIntosh Road Materials Co. v. Woolworth*, 365 Pa. 190, 74 A.2d 384 (1950). In *McIntosh*, the Department of Property and Supplies (Commonwealth agent) acting on behalf of the Department of Highways, solicited bids for materials to maintain and resurface state highways. The bids could be submitted in three forms. McIntosh submitted a bid form under which it assumed general demurrage liability. A second bidder submitted a form under which the Department of Highways would assume the general demurrage liability. The Commonwealth agent opened and accepted McIntosh's bid. Thereafter, the Commonwealth agent de-

cided that, taking the distribution of demurrage liability into consideration, the second bidder had submitted a lower bid. The Commonwealth agent notified McIntosh that the acceptance of its bid was withdrawn.

The Commonwealth argued that a Commonwealth agent could withdraw an award based on the agent's discretionary authority to decide which bid is the lowest after considering all relevant factors. The supreme court held that the "time for the [Commonwealth agent] to be scrupulously alert in the exercise of his discretion for 'the best interests of the Commonwealth' is when the bids are opened, as advertised, and he makes his award of contracts accordingly." *Id.* 365 Pa. at 206, 74 A.2d at 391. Canteen asserts that in the present case, the City "seeks to accomplish that which was specifically proscribed by the *McIntosh* court." Although this argument is vaguely stated, presumably Canteen contends that the City withdrew the acceptance of Canteen's bid because it decided that the withdrawal was in the City's best interest.

■ This argument is contrary to the undisputed fact that the City withdrew the acceptance because it decided that Canteen's bid violated the bid instructions and was therefore invalid as a matter of law. *McIntosh* does not hold that a public agent is prohibited from withdrawing its acceptance of a bid where the bid is contrary to the bidding instructions. The supreme court concluded that even after a bid has been accepted, a public agent retains the authority to withdraw the acceptance if it finds "fraud, collusion or *legally disqualifying error.*" *Id.* 365 Pa. at 206, 74 A.2d at 391 (emphasis added).[4] In the present case, the City with-

4. Canteen also relies on *Muncy Area School District v. Gardner,* 91 Pa.Commonwealth Ct. 406, 497 A.2d 683 (1985) and *Fumo v. Redevelopment Authority of the City of Philadelphia,* 115 Pa.Commonwealth Ct. 542, 541 A.2d 817 (1988), as support to argue that the issuance of an award by a government unit creates a contract. We believe these cases are inapposite to the present case.

In *Muncy,* a school district solicited bids for construction work. The bid instructions directed bidders to submit one price for alteration work and the construction of additions to a building and a separate price for just the alteration work. The bidder submitted a

drew the acceptance of Canteen's bid based on an alleged violation of the bid instructions. Because the City cannot accept a bid which violates bid instructions, the alleged violation constitutes legally disqualifying error.

This leads us to the second issue, whether the inclusion of the guaranteed fee exception violated the bid instructions and therefore constituted a legally disqualifying error. The City argues that the bid instructions required bidders to guarantee a minimum annual fee. The City contends that Canteen's bid did not comply with the bid instructions because it included an exception to the guaranteed minimum annual fee.

Canteen contends that the bid instructions did not require bidders to assume the risk of losses caused by strike, act of God, war or riot. Canteen asserts that its inclusion of the fee exception clause is consequently not contrary to the bid instructions and cannot constitute a legal basis to disqualify its bid.

bid with two prices, after which he discovered an error in the calculation for the price of the alteration work. The bidder failed to withdraw the erroneous bid according to the bid instructions. The bid was accepted by the school district, which awarded the bidder the contract. The court stated: "A public contract has its inception in the award as distinguished from the formal signing of the contract, and is binding from that time on. It is the contractor, not the government unit, which acts at its peril in submitting bids and entering contracts." *Id.*, 91 Pa.Commonwealth Ct. at 412, 497 A.2d at 686.

In *Fumo*, the Redevelopment Authority of the City of Philadelphia (Authority) solicited bids for the sale of real estate. Fumo submitted a bid, which Authority accepted, awarding Fumo the contract, after which Authority attempted to add an additional condition upon the sale which was not contained in the bid instructions. This court held that the Authority could not add the condition to the contract after bids had been submitted and opened.

In *Muncy*, this court addressed only the question of when a contractor becomes contractually obligated to a government unit. The case did not address the issue of when the government unit becomes contractually obligated to a contractor. In *Fumo*, we decided only the question of whether a government unit could extract additional conditions from a contractor whose bid was accepted by the government unit. In the present case, the City did not attempt to add any conditions to the concession contract which were not contained in the bid instruction.

Bid instructions set forth in an invitation to bid are mandatory and must be strictly followed for the bid to be valid. *Nielson v. Womer,* 46 Pa.Commonwealth Ct. 283, 406 A.2d 1169 (1979). The bid instructions required bids to contain a minimum guaranteed annual payment. We conclude that Canteen's inclusion of the guaranteed fee exception failed to strictly follow the bid instructions, rendering Canteen's bid invalid.

We must next consider the third issue of whether Canteen could modify its bid by removing the fee exception and thereby bring its bid into compliance with the instructions. The City contends that the trial court erred by concluding that Canteen could withdraw the fee exception from the bid and thereby bring the bid into compliance with the instructions.

It is fundamental to the process of awarding public contracts that once a bid has been opened, it cannot be modified. *Nielson.* We hold that Canteen's bid was invalid and could not be modified. Consequently, prior to the approval and execution of the contract pursuant to the City Home Rule Charter, the City correctly withdrew the award based on a legally disqualifying error.

Accordingly, we reverse and vacate the trial court's order granting the permanent injunction.[5]

## ORDER

AND NOW, October 24, 1990, the order of the Court of Common Pleas of Philadelphia County in the above-captioned matter is reversed.

---

**5.** Because of the foregoing, we need not consider the fourth issue: whether equitable relief was improperly awarded because Canteen had an adequate remedy at law.