31 N.J. Super. 200 (1954)
106 A.2d 303
BRYAN CONSTRUCTION CO., INC., A CORPORATION OF THE STATE OF NEW JERSEY, PLAINTIFF-APPELLANT,
v.
BOARD OF TRUSTEES OF THE FREE PUBLIC LIBRARY OF THE TOWN OF MONTCLAIR, IN THE COUNTY OF ESSEX, AND FRANK BRISCOE COMPANY, INC., A CORPORATION OF THE STATE OF NEW JERSEY, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued June 7, 1954.
Decided June 14, 1954.
*202 Before Judges CLAPP, SMALLEY and SCHETTINO.
Mr. Milton Bruck argued the cause for the plaintiff-appellant (Messrs. Bruck & Bigel, attorneys).
Mr. Samuel Allcorn, Jr., argued the cause for the defendant-respondent Board of Trustees of the Free Public Library of the Town of Montclair.
*203 Mr. John J. McCloskey argued the cause for the defendant-respondent Frank Briscoe Company, Inc. (Messrs. Levy, Fenster & McCloskey, attorneys).
The opinion of the court was delivered by SMALLEY, J.S.C. (temporarily assigned).
This is an appeal from a summary judgment rendered in favor of defendants in a proceeding in lieu of prerogative writ, commenced by plaintiff to set aside the action taken by defendant Board of Trustees of the Free Public Library of the Town of Montclair, in awarding to defendant Frank Briscoe Company, Inc., a contract for the construction of a new public library. A statement of the facts, which are substantially uncontroverted, that gave rise to the dispute, may be set forth as follows:
The advertisement contained the following language:
"Instructions to Bidders, Forms of Proposal, Drawings, Specifications and other Contract Documents may be examined at the Main Public Library and a copy thereof may be obtained by each bidder upon application to the librarian, Miss Margery Quigley, at the Main Library Building at 73 Church Street, Montclair, New Jersey and deposit of $50.00. * * *
Each bid must be accompanied by a certified check for ten per cent (10%) of the amount of the bid drawn upon an incorporated bank or trust company, payable to the Board of Trustees of the Free Public Library of the Town of Montclair, as a guarantee that in case the contract is awarded to the bidder he will within two weeks thereafter execute the contract and furnish satisfactory bond. Upon failure to do so he shall forfeit the security as liquidated damages.
The checks of all except the three (3) lowest bidders on each item will be returned within three (3) days after the opening of the bids, and the remaining checks, except for the check of the successful bidder on each item, will be returned when the contract has been executed, or in any event, within thirty (30) days after the opening of the bids. No bidder may withdraw his bid within thirty (30) days after the opening thereof."
The "Instructions to Bidders" contain the following recitals:
"The bidders shall refer to the Advertisement regarding the time and place of the receipt of bids, the amount of deposit required for *204 copies of the drawings and contract documents, and certified check or bid bond required with each proposal, the bond required, and other matter pertaining to the award of the contracts."

* * * * * * * *
"The Trustees of the Free Public Library reserve the right to waive minor informalities in any bid or bids."
Although the advertisement was silent as to the use of bid bonds, it should be noted that the specifications not only referred to their use, but also contained a form of bid bond to be used by those bidders, who desired to avail themselves of that medium of deposit. Further, it is significant that of 36 bids received, 14 were accompanied by bid bonds conforming with the instructions.
Defendant Frank Briscoe Company submitted the lowest bid, $302,217, accompanied by a bid bond in the amount of $80,000. The next lowest bid was submitted by plaintiff, $325,800, accompanied by a certified check for $35,000. It can thus be seen that defendant's bid was more than $23,500 less than plaintiff's, and that the bid bond was far in excess of the requisite 10% of the bid. Nevertheless, the plaintiff made public objection to defendant's bid on the ground that it was accompanied by a bid bond rather than a certified check. However, the defendant board of trustees accepted defendant's bid and adopted a resolution awarding it the construction contract. Plaintiff then commenced the present action, in which the defendants prevailed when their motion for summary judgment was granted. Plaintiff appeals, alleging as error defendant company's deviation from the advertisement in submitting its bid, and further that the defendant board's waiver of the requirement of deposit of a certified check destroyed competitive bidding, and was thus contra to the intendment of R.S. 40:50-1, and for these reasons, it, instead of defendant, should have been awarded the contract.
Appellant's contention that defendant company deviated from the terms of the requirements for submitting bids is not well taken. Although it is true that the advertisement *205 suggests the use of certified checks, it is apparent that the advertisement was not, in fact, nor intended to be the sole criterion upon which prospective bidders were to rely. Quite the contrary view is presented from the very words of the advertisement, as "Instructions to Bidders, Forms of Proposal, Drawings, Specifications and other Contract Documents" were subject to examination and a copy thereof obtainable from the librarian. Therefore, before a bidder could or would submit a bid, in order to inform himself of the necessary knowledge upon which to base a reasonable bid, he would first obtain the above mentioned data. In so doing, he would have, of necessity, encountered the instructions to bidders. How else could he possibly know with any degree of exactitude what avenues to pursue in submitting a potentially acceptable bid? The instructions contain unequivocally the words "bid bond," and further, the specifications set forth the precise form of bid bond to be used by those who desired to submit a bid bond instead of a certified check. There would be no purpose, whatsoever, in including the form bid bond to be used if bid bonds were not one of the modes in which a deposit may have been made. Since the advertisement was merely the general means utilized to inform the public that a construction contract was to be awarded upon bids submitted, it is manifest that it only constituted a portion, and not the whole, of the necessary information required to submit a bid. From the advertisement, alone, it would have been impossible to have known any of the details upon which to base a bid, other than the fact that a building was to be constructed.
Therefore, it seems most reasonable that the advertisement, the instructions to bidders, and the specifications would have to be and were intended to be read together to ascertain the requisites of bidding.
Each bidder was supplied with the specifications containing the instructions, and each was required to certify that he had read them. Thus, all were equally apprised of the alternatives of a certified check or a bid bond accompanying *206 each bid. We conclude that the respondent company conformed explicitly with the specifications by submitting a bid bond, as was its legitimate prerogative, as set forth by defendant board's requirements.
Since we have found there was precise compliance with the instructions, or at least, a most substantial compliance, viewed in a light most favorable to appellant, the disposition of appellant's second ground for reversal takes on academic rather than real proportions. But, assuming, arguendo, that defendant company failed to comply with complete regularity, we, nevertheless, find no merit in appellant's second contention. The defendant board expressly and specifically reserved "the right to waive minor informalities" in any bid. Further, a municipal body has a greater function in dealing with irregularities in such matters than merely exercising a ministerial and perfunctory role. It has inherent discretionary power, and what is more, a duty to secure, through competitive bidding, the lowest responsible offer, and to effectuate that accomplishment it may waive minor irregularities.
"Mere irregularity of a bid will not justify its rejection by a municipal body charged with a duty of awarding a contract to the lowest bidder. The form of the bid, not being embodied in the statute, is a regulation prescribed by the city; and failure to technically comply with the form required will not defeat the right of the lowest bidder, to have the contract, if, after the bids are opened, it appears there has been a substantial compliance with the requirements, and he tenders himself ready to execute the requisite contract and furnish responsible bondsmen or good security, as was the fact in this case. The statute is intended to secure to the city the contracting of the work to the lowest responsible bidder, and mere irregularities in the form of the bid, or details of statement, which do not in any way mislead or injure, are not sufficient to justify the rejection of such a bid. It is in the interest of the public that the lowest bid, though it be irregular, be accepted, and, if necessary, that the bidder have opportunity to correct an irregularity, while not changing the substance of his bid." Faist v. City of Hoboken, 72 N.J.L. 361 (Sup. Ct. 1905).
If it can be said any irregularity here existed, it is patent that competitive bidding was not in any wise affected.
*207 It prevented no one from bidding, and all those that did bid were on equal footing, having the same opportunities as defendant company to read and utilize the instructions. To substantiate and further bolster this point, respondent points out that 13 others, who submitted bids, utilized the bid bond as security. This is not a case involving collusion or fraud on the part of the respondent and defendant board, as the specifications were interpreted identically by 13 other unrelated and independent bidders.
"There must be proof of collusion or of fraudulent conduct on the part of such bidder and the city or its engineer or other agent, or proof of other irregularity of such substantial nature as will operate to affect fair and competitive bidding." Frank Stamato & Co. v. City of New Brunswick, 20 N.J. Super. 340 (App. Div. 1952), citing Phifer v. City of Bayonne, 105 N.J.L. 524 (Sup. Ct. 1929); Walter v. McClellan, 113 App. Div. 295, 99 N.Y.S. 78 (App. Div. 1906), affirmed 190 N.Y. 505, 83 N.E. 1133 (Ct. App. 1907).
The appellant, at all arguments, stated that there was no charge of fraud. It was to the manifest benefit of citizens and taxpayers of the municipality to have defendant board accept defendant company's bid, as it meant a saving in excess of $23,500. It may further be noted that defendant company deposited more than adequate security for performance, and has at all times been ready, willing, and able to execute the contracts, submit a performance bond, and perform the work required.
In conclusion, it may be said that, at most, a mere technical irregularity existed, which was waivable and which would be to the substantial interest of the defendant board and the municipality to waive.
"It is not any kind of irregularity in specifications of proposed public work to be done that will have the effect of voiding the award. The irregularity must be of a substantial nature  such as will operate to affect fair and competitive bidding." Phifer v. City of Bayonne, supra.
We are therefore of the opinion that the submission of a bid bond, as security, did not in any way materially damage *208 competitive bidding, that there was a substantial compliance, if not a total compliance, and if any irregularity did exist, the defendant board had the power, and further the duty, to waive it in the best interests of the municipality.
It is for these reasons that the judgment of the trial court will be affirmed.
Affirmed.