566 A.2d 649

Michael KARP and Amy Karp Individually and General Partners of University Club Associates, a Partnership, Appellants,

v.

REDEVELOPMENT AUTHORITY OF the CITY OF PHILADELPHIA, Lee A. Casper, Edward A. Keenan, Kathleen Mulhern and Alice Lipscomb and Office of Community Development of the City of Philadelphia and Danico, Inc. et al., Appellees.

Commonwealth Court of Pennsylvania.

Argued June 8, 1989.

Decided Nov. 22, 1989.

Reargument Denied Feb. 2, 1990.

Barry E. Ungar, with him, Janet S. Holcombe and Rachel B. Mann, Mann and Ungar, P.A., Philadelphia, for appellants.

Rudolph Garcia, with him, George C. McFarland, Jr., Saul, Ewing, Remick & Saul, Philadelphia, for appellees, The Redevelopment Authority of the City of Philadelphia, Lee A. Casper, Edward C. Keenan, Kathleen Mulhern and Alice Lipscomb.

Herbert G. Keene, Jr., with him, John J. Murphy III, and Paula D. Shaffner, Stradley, Ronon, Stevens & Young, Philadelphia, for appellees, Danico, Inc. and Renaissance Investment Company, Partners trading as Chestnut Commons, Ltd.

Before BARRY, McGINLEY and SMITH, JJ.

## OPINION

BARRY, Judge.

The Redevelopment Authority of the City of Philadelphia (RDA), appellee, invited bids in October of 1985 for the purchase and development of a piece of real estate in the University City Urban Renewal area. The bidding requirements contained in the bid invitation included an obligation to deposit ten percent of the bid price and a statement that it is the developer's responsibility to document its financial capability to undertake the project. After the bids were submitted, they were forwarded to the Technical Evaluation

Committee (TEC) which examined the bids and made a recommendation to the Board of the RDA. Robert Hazen, who is both a member of the TEC and the executive director of the Board, made the actual recommendation which was to award the contract to Chestnut Commons, Ltd. (Chestnut Commons), appellee. The Board accepted this recommendation and voted to award the redevelopment contract to Chestnut Commons.[1]

Appellants, Michael and Amy Karp, general partners of University Club Associates, submitted a bid to develop the parcel of land in question which was rejected in favor of Chestnut Commons. Appellants brought a suit in the Court of Common Pleas of Philadelphia County seeking equitable relief and damages. The trial court bifurcated the case so that it could first decide the equitable issues. The equitable relief sought by appellants was that the award by the Redevelopment Authority be declared null and void, that appellees be enjoined from entering into any contract pursuant to the award, and that any contract which had already been entered into be declared void. After a trial, the court initially determined that Chestnut Commons had not complied with the ten percent bid deposit requirement and ordered that the selection of Chestnut Commons be null and void. After post trial motions were filed the court overruled its earlier order and declared the award valid. This appeal followed.

Appellants argue that the RDA's selection of Chestnut Commons was arbitrary and capricious and a violation of the competitive bidding process. Specifically they argue that the decision was not based upon informed expert judgments, that Robert Hazen improperly influenced the RDA's decision in favor of Chestnut Commons, that Chest-

1. For a more complete discussion of the competitive bidding procedures followed by the RDA, please refer to *Greek Orthodox Cathedral of Saint George v. Redevelopment Authority of the City of Philadelphia*, 115 Pa. Commonwealth Ct. 531, 541 A.2d 822 (1988). The decision to award a redevelopment contract is not made solely on the basis of the highest bid price, but includes the evaluation of other factors such as the architectural design of proposed buildings and the participation of minority contractors.

nut Commons misrepresented a fundamental fact affecting its ability to finance the redevelopment, that less than ten percent of the bid proposal was deposited, and that there was a material variance between Chestnut Common's bid proposal and the contract executed pursuant to the award.

■ Our scope of review of a decision of a court of common pleas sitting in equity is limited to whether apparently reasonable grounds existed for the relief ordered and whether errors or inapplicable rules of law were relied on. *Berryhill v. Dugan,* 89 Pa. Commonwealth Ct. 46, 491 A.2d 950 (1985). As the trial court recognized, the most important issue we must address in this case is the standard of review of the trial court. In *Weber v. City of Philadelphia,* 437 Pa. 179, 262 A.2d 297 (1970), a case involving competitive bidding, the Pennsylvania Supreme Court stated that courts will not sit in review of municipal actions involving discretion in the absence of proof of fraud, collusion, bad faith or arbitrary action equating an abuse of discretion. In the more recent case of *American Totalisator Co. v. Seligman,* 489 Pa. 568, 414 A.2d 1037 (1980), the Court recited the similar standard that courts will not review the actions of governmental bodies or administrative tribunals involving acts of discretion in the absence of bad faith, fraud, capricious action or abuse of power.

■ An award in the competitive bidding context must be overturned if mandatory requirements in the bid instructions are not followed. *Whitemarsh Township Authorities v. Finelli Brothers,* 408 Pa. 373, 184 A.2d 512 (1962); *Conduit & Foundation v. City of Philadelphia,* 41 Pa. Commonwealth Ct. 641, 401 A.2d 376 (1979). In a letter included with its bid proposal, Chestnut Commons stated:

Chestnut Commons Partnership is prepared to offer the Redevelopment Authority of the City of Philadelphia, Two Million Three Hundred Thousand Dollars ($2,300,-000) for this parcel. . . .

We have determined a land value for Phase I of $1,800,-000 and have incorporated in the body of this proposal an

irrevocable letter of credit in the amount of $180,000, representing 10% of this initial purchase price. The balance of the funds attributable to the purchase of land ($500,000) will be due and payable prior to commencement of Phase II as described below.

In the trial court's original opinion, the court found that Chestnut Commons had not met the bid deposit requirement. The court made this decision based on its finding that the bid price was $2,300,000 since the above quoted letter does not state that the $500,000 associated with Phase II is conditional. In the opinion accompanying its second order, the trial court states that it "still believes that the fair and correct meaning of the letter dated December 9, 1985, which was an integral part of the proposal submitted by Chestnut Commons, was that Chestnut Commons offered $2,300,000 for the parcel." Despite making this statement, the court declared the award valid based on its reasoning that the members of the RDA voting on the bids had some rational basis to conclude that the bid deposit was sufficient.

The source of the "rational basis" test applied by the trial court lies in *Board of Public Education of the School District of Pittsburgh v. Thomas*, 41 Pa. Commonwealth Ct. 490, 399 A.2d 1148 (1979), in which this Court stated that "an action is not arbitrary merely because it does not effectuate a policy in the most effective or efficient manner, so long as it has some rational basis." The test was again mentioned in *Lynch v. Urban Redevelopment Authority of Pittsburgh*, 91 Pa. Commonwealth Ct. 260, 496 A.2d 1331 (1985), in which this Court stated that an "action will only be found to be arbitrary and capricious where it is unsupportable on any rational basis because there is no evidence upon which the action may be logically based."

We do not believe that the rational basis test was properly used in this context. While the rational basis test may be a guide in determining the arbitrariness of a discretionary decision, determining whether the requirements contained in the bid invitation were met is not a discretionary

matter. These requirements are mandatory and the administrative body cannot decide in its discretion whether the bidder's effort at meeting the requirement was sufficient. *Conduit.* Yet, this appears to be the basis of the court's decision since the only "evidence" which the court points to is the Board members' belief that the bid price was $1,800,-000. The only other evidence mentioned in the court's opinion is the reliance by one of Board members on the report of Robert Hazen to the Board. This report clearly states that the bid price of Chestnut Commons is $2,300,000. In order for the court to determine whether the deposit requirement was met, it is necessary for the court to make a finding as to what the bid price was. If the price was $2,300,000 then the deposit requirement has not been met and the award must be overturned. If Chestnut Common's bid price was ambiguous, then the requirement still has not been met and the award must be declared null and void. We could remand for the court to make such a finding but since the court has already found that the fair and correct meaning of the letter included with the bid proposal was that the bid price was $2,300,000 and since it is clear from the record that the $500,000 was never described as conditional before the award was made[2] and that the amount represented to the Board as the bid price was $2,300,000, there are no factual findings to be made and we will reverse the order of the trial court and declare the award and any contracts associated with it null and void. The RDA must conduct a rebidding. We do not take this action lightly, given both the trial court's and our own narrow scope of review. However, the bid requirements are mandatory and we cannot allow bidders to gain a competitive advantage by representing one figure as the amount necessary for the deposit requirement and a higher figure as their bid price,

2. After the award was made, Chestnut Commons negotiated a contract with the RDA which contained a provision that Phase II had to begin within 105 months of the start of Phase I, otherwise the RDA could seek a new developer. Since Chestnut Commons might therefore never begin Phase II, the $500,000 became conditional. This provision does not affect our decision since it did not come about until after the award was made. During the bidding process the $500,000 was represented as being unconditional.

even if they have not done so intentionally. Such an advantage is unacceptable. *Conduit.*

Because of our disposition of this case, we need not address appellants other issues.[3] The order of the trial court is reversed.

## ORDER

NOW, November 22, 1989, the order of the Court of Common Pleas of Philadelphia County, dated January 3, 1989, at No. 3495, May Term, 1986, is reversed. The award of the redevelopment contract to Chestnut Commons is declared null and void.

3. A few of these issues are intertwined with the deposit issue. Appellants allege that Robert Hazen "tilted the playing field" in favor of Chestnut Commons when he presented the TEC's recommendation to the Board. Part of the alleged conduct was Hazen's contribution to the representation of $2,300,000 as being the bid price. Hazen admitted that he used the higher figure in order to make the bid seem more attractive. The trial court agreed with the argument that Hazen had "tilted the playing field" but concluded that this was not sufficient to void the award because, again, the Board members had some rational basis for choosing Chestnut Commons.

Appellants also argue that the time limit added to the redevelopment contract, discussed in the previous footnote, was a material change from the proposal and violates the competitive bidding process.