Richard F. SMITH, Grand Central Sanitation, Inc. and Grand Central Sanitary Landfill, Inc.,

v.

The BOROUGH OF EAST STROUDSBURG, Monroe County Municipal Waste Authority and J.P. Mascaro & Sons, Inc.,

The Borough of East Stroudsburg, Appellant.

Richard F. SMITH, Grand Central Sanitation, Inc. and Grand Central Sanitary Landfill, Inc.,

v.

The BOROUGH OF EAST STROUDSBURG, Monroe County Municipal Waste Authority and J.P. Mascaro & Sons, Inc.,

J.P. Mascaro & Sons, Inc., Appellant.

Commonwealth Court of Pennsylvania.

Argued April 10, 1997.

Decided May 22, 1997.

---

William F. Fox, Jr., Harleysville, and Robert G. Williamson, East Stroudsburg, for appellants.

H. Clark Connor, Mount Pocono, and Alyssa Lopiano–Reilly, Bangor, for appellees.

Before COLINS, President Judge, SMITH, J., and SILVESTRI, Senior Judge.

**1.** Erroneously stated in the August 7, 1996 order as a "preliminary" injunction.

**2.** Act of July 28, 1988, P.L. 556, 53 P.S. §§ 4000.101—4000.1904.

SILVESTRI, Senior Judge.

These are separate appeals by the Borough of East Stroudsburg (Borough) and J.P. Mascaro and Sons, Inc. (Mascaro), which have been consolidated, from an October 31, 1996 order of the Court of Common Pleas of Monroe County (trial court) denying their separate, but same, motions for post-trial relief, and affirming its order of August 7, 1996 granting the request of Richard F. Smith, Grand Central Sanitation, Inc. (Grand Central Sanitation), and Grand Central Sanitary Landfill, Inc. (Grand Central Landfill) for a permanent injunction.[1]

The factual and procedural history is as follows. Grand Central Landfill is the owner of a landfill located in Pen Argyl, Northampton County, Pennsylvania. The Monroe County Municipal Waste Authority (Authority), pursuant to the Municipal Waste Planning, Recycling and Waste Reduction Act,[2] was designated to undertake solid waste planning and plan implementation for Monroe County. Thereafter, the Authority adopted the Monroe County Municipal Waste Management Plan (Plan) which it implemented by entering into a landfill service agreement with Grand Central Landfill for the disposal of Monroe County's municipal waste at its landfill. The Borough, by resolution of Borough Council, adopted the Plan, which specifically provided, inter alia, that its municipal waste be disposed of at the Grand Central Landfill landfill. (R.R. 128a.) Subsequent to approval of the Plan by the various municipalities,[3] the Department of Environmental Protection approved the aforesaid Plan, following which Monroe County adopted the Monroe County Municipal Waste Management Authority Flow Control Ordinance of 1992 (Ordinance). The Ordinance made it unlawful to dispose of Monroe County's waste at any landfill not located in Pennsylvania and mandated that all municipal waste be disposed of at the Grand Central Landfill.

**3.** All municipalities in Monroe County ratified the Plan.

For a period of time prior to 1996, the Borough had contracted with Grand Central Sanitation to collect all municipal waste within the Borough. This contract was due to expire at the end of 1995. On October 2 and October 5, 1995, the Borough advertised its solicitation for bids for a three (3) year contract, to commence on January 1, 1996, for the collection, removal and disposal of all garbage, refuse and other residential waste generated by households in the Borough. On October 10, 1995, a pre-bid conference was held by the Borough Manager and was attended by both Grand Central Sanitation and Mascaro. At the pre-bid conference, Grand Central Sanitation inquired whether compliance with the Ordinance was mandatory. The Borough Manager did not reply to this question other than to say that an addendum would be issued to its solicitation for bids. On October 12, 1995, the Borough issued a supplemental notice to bidders, as follows:

Regarding waste flow control requirements please refer to Paragraph 1 of the General Conditions, page 5.[4] Please be advised that the Borough of East Stroudsburg in 1991 approved the Monroe County Municipal Waste Management Plan, and the Monroe County Commissioners on 2–25–92 adopted the Monroe County Municipal Waste Management Ordinance which empowers them to implement and enforce the County Plan. Copies of the Plan and the County Waste Management Ordinance are available from the Office of the Municipal Waste Management Authority, 38 North 7th St., Stroudsburg, PA 18360, telephone (717) 421–7301.
R.R. 394a.

On October 16, 1995, Mascaro and Grand Central Sanitation submitted bids in response to the solicitation of the Borough.[5] Mascaro's bid was approximately $80,000.00 lower than the bid of Grand Central Sanitation. Accompanying Mascaro's bid was a letter, as part of its bid, which, as herein relevant, provided for the disposal of trash collected in the Borough, as follows:

Please be advised that if our company is successful and awarded the Borough's Trash Collection and Disposal Bid, the Borough's trash will be transported by our company to the Lehigh Valley Recycling Center located in nearby North Whitehall Township, Lehigh County, Pennsylvania. This facility is a solid waste processing and transfer facility ("Transfer Station") operating pursuant to a valid permit issued by the Commonwealth of Pennsylvania, Department of Environmental Protection.

When the waste is dumped at this Transfer Station, it will be processed and transferred into larger trailers and will be transported to either the Brooke County Sanitary Landfill in Colliers, West Virginia and/or the Wetzel County Sanitary Landfill in New Martinsville, West Virginia.

. . . .

With respect to disposal at the out-of-state landfills, current law permits the interstate transportation of waste thereby superseding the Monroe County Flow Control Ordinance. Accordingly, please accept this letter as a technical exception in accordance with No. 3 of your General Instructions to Bidders.
R.R. 234a.

On November 7, 1995, notwithstanding the specifications requiring the disposition of the Borough's waste at the Grand Central Landfill landfill, the Borough awarded to Mascaro a three (3) year contract for the collection of the Borough waste and for its disposal at landfills in West Virginia. On November 27, 1995, Richard Smith, a taxpayer, Grand Central Sanitation and Grand Central Landfill filed a complaint in equity against the Borough and Mascaro seeking to enjoin the performance of the contract awarded to Mascaro

---

4. B. General Conditions, page 5, paragraph 1 is as follows:
    1. The successful bidder will be responsible for the collection, transportation and disposal of all municipal solid waste in a manner meeting all Local [sic] State, and Federal regulations. The proposed contract is subject to the requirements of the Monroe County Municipal Waste Management Authority Flow Control Ordinance of 1992, relative to disposing of waste, licensing requirements and landfill location.

5. A bid, not herein relevant, was also submitted by Waste Management, Inc.

and to disqualify and discard its bid.[6] Following a hearing on Plaintiffs' application for preliminary injunction, which the trial court denied, a trial on the merits was scheduled for June 4, 1996. By agreement of the parties, the matter was submitted on the record and evidence produced at the preliminary injunction hearing.

On August 7, 1996, the trial court issued a final injunction. The August 7, 1996 Order states:

Plaintiffs' request for a preliminary injunction is hereby GRANTED to the extent that Defendant, the Borough of East Stroudsburg is ordered to accept new bids for a contract for the collection of garbage within the Borough. Such contract is to begin on January 1, 1997. Furthermore, Defendant J.P. Mascaro & Sons, Inc. is hereby directed to continue to collect garbage within the Borough of East Stroudsburg until December 31, 1996.

Both the Borough and Mascaro filed post-trial relief motions seeking the same relief, i.e. (1) vacating the trial court's order of August 7, 1996; (2) denying plaintiff's request for injunctive relief; and, (3) declaring the Monroe County Ordinance unconstitutional. By order dated October 31, 1996, the trial court denied the motions for post-trial relief of the Borough and Mascaro and affirmed its order of August 7, 1996. Both the Borough and Mascaro filed appeals to this court.

■ When reviewing a decision of a trial court denying a motion for post-trial relief, our scope of review is limited to a determination of whether the trial court abused its discretion or committed an error of law. *Pikur Enterprises, Inc. v. Department of Transportation*, 163 Pa.Cmwlth. 251, 641 A.2d 11 (1994). Four issues are presented for our review. The Borough and Mascaro assert that 1) the Ordinance is in violation of the commerce clause of the U.S. Constitution, 2) the Borough is not bound by the Ordinance, 3) Mascaro was not given an unfair advantage in the bidding process, and that 4) Mascaro is entitled to dispose of the

waste at out-of-state landfills under the "existing contract exception" and the contracts clause of the U.S. Constitution. Because we dispose of this matter on issue three (3), we do not address the remaining issues.

■ As to the issue of whether Mascaro was given an unfair advantage in the bidding process for the municipal waste contract, we refer to the opinion of the trial court which, in relevant part, is as follows:

Throughout the bidding process, the Borough represented to all prospective bidders that all bids received had to be in compliance with the Monroe County Flow Control Ordinance. (See Findings of Fact). Yet it would appear now that throughout the process, the Borough did not agree with the Ordinance and clearly had no intention of following it. This unilateral decision made on behalf of the Borough resulted in J.P. Mascaro obtaining an unfair competitive advantage over the other bidders. J.P. Mascaro was able to compute a bid which was substantially lower that (sic) the other bids because J.P. Mascaro's bid did not factor in the tipping fees charged at the Monroe County dumping site in Pen Argyl.

In essence, the bidding process employed by the Borough lacked the integrity demanded of public contract bidding. The entire process was unfair because, simply stated, the Borough told everyone one thing, and then did another. In fact, this Court would be more likely to uphold this bidding process had the Borough told prospective bidders that it was currently contesting the validity of the Flow Control Ordinance and that it was willing to accept bids involving out-of-state dumping. The harm done here was not in the fact that the Borough ignored the county plan, but that the Borough made a major misrepresentation to the bidders. This representation then resulted in one bidder having an unfair competitive advantage over the others. Courts will not uphold such conduct.

(Opinion of trial court at pp. 13–14.)

---

6. Although Monroe County Municipal Waste Authority was named as a party defendant in the equity action before the trial court, there are neither allegations in the complaint of any actionable conduct of the Authority nor is any relief sought against the Authority.

It is well-settled that the specifications set forth in a bidding document are mandatory and must be strictly followed for the bid to be valid. *Philadelphia v. Canteen Company Division of TW Services, Inc.*, 135 Pa.Cmwlth. 575, 581 A.2d 1009 (1990); *Nielson v. Womer*, 46 Pa.Cmwlth. 283, 406 A.2d 1169 (1979). Furthermore, an award of a contract in a competitive bidding process must be overturned if the mandatory requirements in the bid instructions are not strictly followed. *Karp v. Redevelopment Authority of Philadelphia*, 129 Pa.Cmwlth. 619, 566 A.2d 649 (1989), *petition for allowance of appeal denied*, 527 Pa. 619, 590 A.2d 760 (1990).

Here, the bid instructions of the Borough clearly stated that the successful bidder must collect, transport and dispose of municipal waste in accordance with applicable local, state, and federal laws and that the proposed contract was subject to the requirements of the Ordinance. It is admitted that the landfill site of Grand Central Landfill in Northampton County was specifically designated in the specifications to be used for the disposal of municipal waste generated in Monroe County, including the Borough.[7]

The deviation by Mascaro in predicating his bid on out-of-state disposal of municipal waste was not a technical aspect of the bid but was a substantial and material deviation from the bid specifications. Such a deviation provided Mascaro with an unfair competitive advantage which the Borough approved by refusing to comply with its own ordinance, which adopted the Plan of the Authority requiring disposal of its municipal waste at the Northampton County landfill. The validity of bid specifications is to be determined by challenging the specifications prior to the date for submitting the bids. To submit bids in response to an invitation to bid upon terms, conditions and provisions not specified in the invitation for bids, without authority or knowledge of the solicitor of the bids and/or other potential bidders, is not in compliance with such invitation to bid, and such bid is invalid and a nullity. Mascaro's failure to comply with the bid specifications relating to disposal of the Borough's waste in Pennsylvania rendered its bid invalid.

Accordingly, the order of the trial court will be affirmed.

### ORDER

AND NOW, this 22nd day of May, 1997, the October 31, 1996 order of the Court of Common Pleas of Monroe County denying the post-trial relief motion of J.P. Mascaro & Sons, Inc. and affirming its order of August 7, 1996 is affirmed.

---

7. See paragraph 7 of Complaint in Equity (R.R. 10a), the Borough's Answer (R.R. 37a) and Mascaro's Answer thereto (R.R. 59a).