788 A.2d 363

### Nick GAETA

v.

### RIDLEY SCHOOL DISTRICT and IBE Contracting, Inc.

Supreme Court of Pennsylvania.

Argued Oct. 16, 2001.

Decided Jan. 25, 2002.

Richard Dylan Procida, Stephen J. Polaha, Arthur Levy, Media, for Ridley School District.

Thomas L. Kelly, Media, for IBE Contracting, Inc.

502

George E. Pallas, Jamie L. Sandman, Philadelphia, for Nick Gaeta.

Before: FLAHERTY, C.J., and ZAPPALA, CAPPY, CASTILLE, NIGRO, NEWMAN, SAYLOR, JJ.

## OPINION

SAYLOR, Justice:

At issue in this appeal is whether, pursuant to principles designed to implement a statutory scheme of competitive bidding for public construction projects, a school district was obliged to reject a low bid submission which included a bid bond that did not meet an advertised surety quality rating requirement.

In March of 1999, in accordance with competitive bidding requirements reposited in the Public School Code of 1949,[1] 24 P.S. § 7–751, Appellant Ridley School District (the "District") publicly circulated an invitation for bids for thirty-one prime contracts for the construction of a new high school, including one encaptioned "Aluminum Entrances and Storefronts Construction" (the "contract"). Among other things, the invitation required submission of sealed bids by a date and time certain and set forth requirements for the execution of bid bonds. Associated instructions to bidders further specified that the bid bond surety was to possess a "Best rating" (an evaluation of stability and profitability as adjudged by A.M. Best Company) of "A-" or better.[2] In addition, the instructions contained

[1]. Act of March 10, 1949, P.L. 30 (as amended 24 P.S. §§ 1–101–27–2702).

[2]. The full text of the bid bond instructions is as follows:

A bid bond, certified check, or cashier's check, in the amount of 10% of the proposed Contract Amount must accompany each bid. Bid bonds shall be on AIA Form A310, Document 00410, or on the form provided by the surety company, which has the same exact wording as AIA A310, and made out to the Owner in the name of the firm, persons, or company signing the Bid Form. Surety Company shall be licensed to do business in the Commonwealth of Pennsylvania with a minimum Best Rating of A- or better. The successful bidder's security will be retained until he has signed the Contract and furnished the required Performance Bond and Payment Bond (AIA Form A312). The Owner reserves the right to retain the security of the next two lowest bidders until the lowest bidder enters into contract. If any

a reservation of rights on the part of the District pertaining to waiver of bid irregularities.[3]

IBE Construction, Inc. ("IBE"),[1] submitted a timely bid for the contract, together with a bid bond issued by Commonwealth Insurance Company, which maintained a Best rating of "B," a lower rating than called for in the District's instructions. Subsequently, the District contacted IBE, notifying it of this irregularity and requesting a compliant bid bond. The next day, IBE presented a bond from American Manufacturers Mutual Insurance Company, assigned a Best rating of "A." The District thereafter awarded the contract to IBE at a cost of $896,000. The next lowest bid had been submitted by Almond Glass Works, Inc. ("Almond"); although Almond's offer was to perform the work for nearly $100,000 more than IBE's bid, its submission included a bid bond that was fully compliant with the bidding documents.

Subsequently, Nick Gaeta ("Gaeta"), a taxpayer in the school district, filed a complaint in equity, seeking a permanent injunction against the award of the contract to IBE and an order directing the District to instead award the contract to Almond. Gaeta also filed a petition for a temporary restraining order and preliminary injunction directed toward the above ends, to which he attached an affidavit from Paul Almond, president of Almond, which described the Best "A-" rating as "secure" and the "B" category as "vulnerable."

> bidder refuses to enter into a Contract, the Owner will retain his bid bond.
>
> Instructions to Bidders, § 1.03(A).

3. This provision, found among the "award of contract" terms of the instructions to bidders, proceeds as follows:

> Award of Contract will be made if the Owner considers award to be in his best interests. Award will be made to the lowest responsive and responsible bidder on the base bid or any combination of base bid and alternates or any combination of base bids and alternatives for several contracts. The Owner may also consider other factors which he feels have bearing on the Project. The Owner may waive irregularities.
>
> Instructions to Bidders, § 1.09(A).

4. In its answer to the complaint, IBE indicated that it was erroneously identified as IBE Contracting, Inc., in the caption of the complaint.

Given the rating discrepancy arising from IBE's original bid bond submission, Mr. Almond averred that his company was the lowest responsive and responsible bidder. Further, Gaeta attached a separate affidavit asserting that, as a taxpayer in the school district, he opposes contractual expenditures of public funds absent adherence to governing competitive bidding requirements.

The common pleas court conducted a hearing concerning the availability of preliminary injunctive relief, at which the sole evidence presented was an affidavit from Sidney M. Zilber, the president of Commonwealth Surety, the company that provides surety bonding services to IBE through both Commonwealth Insurance Company and American Manufacturers Mutual Insurance Company. In the affidavit, Mr. Zilber attested that neither company charges IBE for the issuance of bid bonds, and that the premium charged once a contract is awarded is the same for both companies (1.75 percent of the contract price); the Zilber affidavit was entered into evidence without objection. In denying injunctive relief, the common pleas court cited *Rainey v. Borough of Derry*, 163 Pa.Cmwlth. 606, 641 A.2d 698 (1994), for the principle that a governmental body may waive bid defects where the omission or noncompliance did not confer a competitive advantage upon the bidder. The court concluded that IBE did not enjoy such an advantage. It reasoned that, once the contract was signed, the bid bond, which merely exists to ensure that a successful bidder will execute a contract, would have been replaced by a performance bond; IBE immediately submitted a new bid bond at the request of the District; and the bidding instructions provided notice that the District reserved authority to waive bid irregularities. Thus, the court held, Gaeta had not demonstrated that the District's alleged wrongful conduct was manifest or that his right to relief was clear. Moreover, the common pleas court reasoned, a grant of injunctive relief would cause greater taxpayer injury in light of the nearly $100,000 difference between the amounts of IBE's and Almond's bids, and would detrimentally delay construction of the new school.

On Gaeta's appeal, however, the Commonwealth Court reversed. *See Gaeta v. Ridley Sch. Dist.*, 757 A.2d 1011 (Pa. Cmwlth.2000). At the outset of its discussion, the court referenced the legislative scheme requiring public, competitive bidding on school construction projects and mandating the award of contracts to low bidders. *Id.* at 1013 (citing 24 P.S. § 7–751(a)). It further described the underlying purposes of these requirements as "inviting competition, to guard against favoritism, improvidence, extravagance, fraud, and corruption in the awarding of municipal contracts." *Id.* at 1014 (citations omitted). The Commonwealth Court then emphasized the general requirement of bid "responsiveness" imposed by the judiciary to effectuate these legislative policies, embodying a general rule that the specifications set forth in bidding documents are to be considered mandatory and must be strictly followed by bidders for their submissions to be deemed valid. *See id.*[5] The court therefore deemed IBE's bid non-responsive on the basis of the irregularity arising from its original bid bond submission. *See id.* Also citing *Rainey* for the proposition that certain bid defects may be waived or cured provided that the defect at issue is a mere irregularity and no competitive advantage is gained by the non-responsive bidder, the Commonwealth Court concluded nonetheless that the variance in the quality of bid bond security manifested in IBE's submission was material and disadvantaged other bidders. *See Gaeta*, 757 A.2d at 1015. In this regard, the court deemed the circumstances analogous to those presented in *Harris v. Philadelphia*, 283 Pa. 496, 129 A. 460 (1925), in which this Court determined that the submission of a certified check as bid security for a lesser amount than that required by statute and ordinance could not be cured by the bidder. *See Gaeta*, 757 A.2d at 1015–16. While acknowledging the substantially increased financial burden accruing to the District as a result of the disqualification of IBE's bid, the Commonwealth Court

5. The requirement has frequently been stated that public contracts subject to a statutory low-bid requirement are to be awarded to the lowest responsive and responsible bidder. *See generally Pearlman v. Pittsburgh*, 304 Pa. 24, 29–30, 155 A. 118, 119–20 (1931)(discussing the separate criterion of bidder responsibility).

opined that "[t]he preservation of the integrity of the competitive bidding process far outweighs the potential cost differential between the lowest bid and the lowest responsive bid." *Id.* at 1016. We allowed the District's appeal to review the Commonwealth Court's conclusions in these regards.

Presently, both the District and Gaeta frame their arguments around the legal standards enunciated by the Commonwealth Court, including the general requirement of bid responsiveness, and the availability of waiver or cure with respect to non-material irregularities lacking anti-competitive aspect. The District highlights the embodiment of these principles in *Harris* and *Rainey*. Acknowledging that *Harris* adds that a *per se* determination of non-responsiveness attaches in circumstances in which a defect pertains to bid requirements grounded in legislative pronouncements, the District emphasizes that there is no legislative predicate for a surety rating requirement for bid bonds. According to the District, its express reservation of the right to waive irregularities in its bid instructions constituted adequate notice to bidders concerning minor post-submission changes or corrections, and therefore, ameliorated any unfairness to bidders that might otherwise have arisen by virtue of IBE's post-submission cure. Regarding the Commonwealth Court's conclusions concerning materiality and competitive advantage, the District argues that they are unsupported by the record. Gaeta, on the other hand, argues that *Harris* stands for the proposition that materiality is established on the face of bid documents to the extent that they employ mandatory language. Since the bid instructions here contained the imperative "shall" in indicating that a bid bond was to be provided by a surety maintaining a Best rating of "A-" or better, *see supra* note 2, Gaeta asserts that the quality of surety provision must be deemed material and mandatory. He further maintains that the materiality of the quality of surety requirement is evident from the diminution in protection provided to the District, and from the District's directive to IBE to correct the irregularity. According to Gaeta, the bid bond irregularity

also afforded a cost advantage to IBE, as well as an option to withdraw its bid without relinquishment of a penal sum.

▇▇▇ Preliminarily, we note that the standard of review for determinations concerning the availability of preliminary injunctive relief is deferential to the court of original jurisdiction.[6] Further, application of the standards governing judicial review of discretionary acts of governmental bodies also entails the affordance of deference to governmental decision makers.[7] Although the applicable review standards thus favor the District's position, in implementing the legislative purposes underlying competitive bidding enactments, Pennsylvania appellate courts have recognized and enforced restrictions upon executive decision making. *See, e.g., American Totalisator*, 489 Pa. at 576, 414 A.2d at 1041 ("When competitive bidding is used and the procedures followed emasculate the benefits of such bidding, we believe judicial intervention is proper"). Such limitations have been couched in terms of the requirement of bid responsiveness, which the Commonwealth Court found controlling in the present case. As the Commonwealth Court recognized, this prerequisite of compliance with bid documentation assures equal footing among competing bidders in furtherance of core legislative objectives.[8]

**6.** An order granting or denying preliminary injunctive relief is subject to limited appellate review, with the Court ascertaining only whether the trial court's action had any "apparently reasonable basis." *City of Phila. v. District Council 33, AFSCME*, 528 Pa. 355, 362, 598 A.2d 256, 259 (1991).

**7.** *See generally American Totalisator Co. v. Seligman*, 489 Pa. 568, 576, 414 A.2d 1037, 1040–41 (1980)(observing that "principles of municipal law forbid the substitution of judicial discretion for administrative discretion"); *McIntosh Road Materials Co. v. Woolworth*, 365 Pa. 190, 210, 74 A.2d 384, 393 (1950)(explaining that "there is a presumption ... that public officials charged with the duty of awarding a contract [for public work] acted in good faith and in the best interests of the governmental agency in making the award[;][n]or will such award be set aside except upon clear proof of abuse of discretion" (citation omitted)).

**8.** *See American Totalisator Co. v. Seligman*, 34 Pa.Cmwlth. 391, 419, 384 A.2d 242, 258 (1977)("The requirement in competitive bidding that there be fair and just competition and an absence of favoritism is violated whenever the bidders are treated otherwise than by a common standard."). The practice of guarding the integrity of the bidding

508

Although the rule of compliance is thus emphasized,[9] courts have not eliminated the discretionary aspect of executive decision making when the government is confronted with a non-compliant bid that it might choose to consider to achieve effective utilization of the public fisc. *See generally Yoder v. School Dist. of Luzerne Twp.*, 399 Pa. 425, 429, 160 A.2d 419, 421 (1960) (highlighting utilitarian expenditure of public funds as an objective of the competitive bidding process). In describing the available latitude, conceptions of materiality and competitive advantage have been utilized, *see, e.g., Rainey,* 163 Pa.Cmwlth. at 616–18, 641 A.2d at 703–04, both of which, again, are closely tied to the legislative objectives underlying competitive bidding statutes. Accordingly, the following two considerations are widely accepted as central in determining whether a non-compliant bid for public work may be accepted or cured:

first, whether the effect of a waiver would be to deprive the municipality of its assurance that the contract will be entered into, performed and guaranteed according to its specified requirements, and second, whether it is of such a nature that its waiver would adversely affect competitive

process also serves to enhance competition, which, in turn, encourages the offering of services at the best price. *See Ezy Parks v. Larson,* 499 Pa. 615, 621, 454 A.2d 928, 931 (1982); *accord In re Fischbach and Moore, Inc. v. New York City Transit Auth.,* 79 A.D.2d 14, 435 N.Y.S.2d 984, 987–88 (1981)(explaining that "[b]idding laws are predicated upon the principles of the free market-place which hold that the most desirable offer from the perspective of both quality and price will emerge through a process of vigorous, free and fair competition among the greatest number of potential contractors," and "[l]ogic and experience teach that competition for public contracts may be promoted only by fostering a sense of confidence in potential bidders that their bids will be fairly considered and that they will not be deprived of any substantial benefit afforded to their competitors").

9. *See, e.g., Gaeta,* 757 A.2d at 1014 ("It is well settled that specifications set forth in a bidding document are mandatory and must be strictly followed for the bid to be valid" (citations omitted)); *Smith v. Borough of East Stroudsburg,* 694 A.2d 19, 23 (Pa.Cmwlth.1997)(same); *Kimmel v. Lower Paxton Twp.,* 159 Pa.Cmwlth. 475, 482, 633 A.2d 1271, 1274–75 (1993)(same); *Karp v. Redevelopment Auth. of Phila.,* 129 Pa. Cmwlth. 619, 622, 566 A.2d 649, 652 (1989)("An award in the competitive bidding context must be overturned if mandatory requirements in the bid instructions are not followed.").

bidding by placing a bidder in a position of advantage over other bidders or by otherwise undermining the necessary standard of competition.

10 McQUILLIN, MUNICIPAL CORPORATIONS § 29.65 (3d ed.1999)(collecting cases). As this formulation represents an apt synthesis of prevailing Pennsylvania precedent on the assessment of the availability of waiver and cure in the public works setting, we will apply it here. Further, we reiterate this Court's admonition that, in circumstances where legislative pronouncements particularize the manner in which government contracts are to be made, such requirements are not subject to waiver. *See Harris,* 283 Pa. at 503, 129 A. at 462.

■ In the present case, since no statute or ordinance attaches a quality rating requirement to bid bond security,[10] we must consider whether the District's quality condition was material in the sense that the effect of a waiver would deprive the District of an adequate assurance, and whether a waiver would have advantaged IBE vis-à-vis competitors. With regard to the assurance factor, as Gaeta contends, review of the language of the bid documents can provide insight into the degree of importance attached to the condition by the District. Upon review of the language employed, however, we find Gaeta's emphasis upon the District's use of the word "shall" to be overstated, as imperatives run throughout the bid instructions and pertain to virtually all requirements of substance and form, and as the District expressly reserved the entitlement to waive irregularities. *See supra* note 3. Further, we do not read *Harris* to establish that imperatives in bid documents are necessarily dispositive of materiality. As previously noted, *Harris's* emphasis was directed to the consequence of the implementation of statutory requirements through instructional mandates, *see Harris,* 283 Pa. at 503, 506–07, 129 A. at 462–64; further, *Harris* explicitly recognized the persistence of limited executive discretion where the instructions

**10.** Various legislative enactments do require the posting of bonds to secure payment and performance in order to ensure that contracts, once entered, are fulfilled. *See, e.g.,* 8 P.S. § 193.

and specifications do not reflect particular legislative directives. *See id.* at 507, 129 A. at 464.[11]

In further assessing materiality, we move to consideration of the specific character of IBE's non-compliance. In this regard, we credit the common pleas court's observation that a bid bond, unlike a performance bond, serves the limited purpose of ensuring that the bidder will sign the contract if awarded. *See generally A.J. Colella, Inc. v. County of Allegheny,* 391 Pa. 103, 108–09, 137 A.2d 265, 268 (1958); 10 McQuillin, Municipal Corporations § 29.66. The restricted purpose, duration, and scope of liability associated with bid security favors the affordance of a degree of latitude to the governmental entity in terms of the demand for absolute responsiveness. *Accord* 10 McQuillin, Municipal Corporations § 29.66 (observing that "[u]sually, . . . substantial compliance with the requirements concerning the security of bids is deemed sufficient").[12]  While documents supplied by Gaeta

11.  The Court further discussed the use of imperatives in *Whitemarsh Twp. Auth. v. Finelli Bros. Inc.,* 408 Pa. 373, 184 A.2d 512 (1962), and in *Colella v. Allegheny County,* 391 Pa. 103, 137 A.2d 265 (1958).  These decisions, however, ultimately emphasized instructional admonitions that assured rejection upon the presentation of non-compliant bid terms.  Further, neither considered the import of an express reservation of rights in the absence of such admonitions.

Although we therefore reject Gaeta's argument concerning the effect of imperatives, in part, based upon the District's reservation of waiver rights, we recognize that such a provision does not, in and of itself, establish the non-materiality of any particular instruction or specification.  *Accord Lovering–Johnson, Inc. v. City of Prior Lake,* 558 N.W.2d 499, 502 (Minn.App.1997)("The rule prohibiting material changes once a bid has been opened applies despite provisions in the bid instructions that allow the public entity to waive irregularities.").

12.  *Cf. Interstate Rock Products, Inc. v. United States,* 50 Fed. Cl. 349, 365–66 (2001) (citing cases for the proposition that federal agencies have appropriately deemed various bids responsive despite various bid bond defects other than those involving omission or alteration of the penal sum); *Smith & Johnson Constr. Co. v. Ohio Dep't of Transp.,* 134 Ohio App.3d 521, 731 N.E.2d 720, 726 (1998) (holding that the award of a contract and the execution of a performance bond rendered moot a defect in the bid bond), *appeal denied,* 83 Ohio St.3d 1475, 701 N.E.2d 382 (1998); *Bryan Constr. Co. v. Board of Trustees of the Pub. Library of Montclair,* 31 N.J.Super. 200, 106 A.2d 303, 306–07 (1954)(holding that the submission of a bid bond rather than a certified check as security was a waivable defect).

outside the record appear to correctly reflect the definitional distinction between A.M. Best's "A" and "B" rating categories, nothing presented contextualizes this difference in terms of its effect upon the necessary assurance to the District given the bid bond's limited purpose, scope, and duration. We find the circumstances distinguishable from those involving price discrepancies, failure to bid on all necessary terms, the omission of cost or performance items, and defects related to a performance bond, concerning which liability is generally of far greater magnitude. *See generally* 10 McQuillin, Municipal Corporations § 29.65. Additionally, we attribute minimal significance to the District's election to require a cure, since this merely represents the exercise of an available option with respect to non-material irregularities.

Concerning the competitive advantage factor, the trial court's finding that any impact of the "B"-rated security was negligible is supported by the only available record evidence, the affidavit presented by IBE. This attestation suggests that the surety company's rating had little or no bearing upon the cost of IBE's bid, and that IBE could have obtained the required bond from another surety with which it deals at like cost. In addition to being unsupported in the record, Gaeta's claim of a significant cost advantage seems unlikely in the circumstances and particularly in light of the substantial disparity between IBE's and Almond's bids. Finally, Gaeta's assertion that the bid bond irregularity afforded IBE an opportunity to retract its bid and undermined the security presented is meritless, since both IBE and its original surety made clear and unequivocal commitments to the District, and Pennsylvania's requirements concerning bid withdrawal are exacting for much the same reasons as are those concerning bid acceptance. *See generally Modany v. State Pub. Sch. Bldg. Auth.*, 417 Pa. 39, 45–48, 208 A.2d 276, 279–80 (1965); *Muncy Area Sch. Dist. v. Gardner*, 91 Pa.Cmwlth. 406, 412–13, 497 A.2d 683, 686–87 (1985).

Variances from instructions and specifications in public works bidding are to be discouraged and, at a minimum, implicate the government's discretionary authority to reject a

512

non-compliant bid. We are satisfied here, nonetheless, that the record thus far presented does not establish such materiality or competitive advantage as would compel bid rejection and, correspondingly, the affordance of preliminary injunctive relief as requested by Gaeta.

Accordingly, the order of the Commonwealth Court is reversed, and the matter is remanded to the trial court.

Former Chief Justice FLAHERTY did not participate in the decision of this case.