PERRY CONSTRUCTION GROUP, INC., Petitioner

v.

DEPARTMENT OF GENERAL SERVICES, Respondent.

Commonwealth Court of Pennsylvania.

Submitted on Briefs Nov. 5, 2004.
Decided Dec. 20, 2004.

Jason A. Copley, Philadelphia, for petitioner.

Nancy J. Kippenhan, Harrisburg, for respondent.

BEFORE: FRIEDMAN, Judge, SIMPSON, Judge, and McCLOSKEY, Senior Judge.

OPINION BY Senior Judge McCLOSKEY.

Perry Construction Group, Inc. (Perry) petitions for review of the decision of the Deputy Secretary for Public Works, denying its bid protest following the rejection of its bid by the Department of General Services (DGS). We now affirm.

On March 22, 2004, DGS issued a notice to bidders concerning a new, one-story Welcome Center for the Department of Transportation in Erie, Pennsylvania.[1] This notice provided that, in accordance with the Commonwealth's Executive Order No. 1996–8, DGS "has established Minority Business Enterprise (MBE) and Women Business Enterprise (WBE) participation levels on all Commonwealth Public Works Projects" and that only certified contractors can be used to achieve these participation levels. (R.R. at 2a). This notice further provided that all bidders must complete and submit a MBE/WBE subcontractor and supplier solicitation and commitment form with its bid, identifying "all MBE's and WBE's that have been solicited, all quotes that have been received (*solicited and unsolicited*) and MBE's and WBE's to which commitments have been made." (R.R. at 3a) (emphasis in original).

With respect to this particular project, the instructions for completion of the MBE/WBE subcontractor and supplier solicitation and commitment form provided that bid submissions which met the minimum participation levels (MPL's) for MBE's and WBE's were to be presumed responsive.[2] With regard to these levels,

---

1. This notice detailed the various types of construction work that would need to be completed, including general construction, HVAC construction, plumbing, electrical, site civil and site electrical.

2. The instructions noted that the "MPL's serve exclusively as a threshold in determining bidder responsibility. A bidder will not be rejected as not responsive because it fails to reach the MPL's; however, the bidder must

the instructions specifically provided that "the bidder must solicit at least five (5) eligible, certified MBE's and five (5) eligible, certified WBE's for subcontract proposals and at least five (5) eligible, certified MBE's and five (5) eligible, certified WBE's for supply proposals." (R.R. at 48a). In the event that a bidder is unable to achieve these MPL's, the instructions directed the bidder to provide a written explanation as to why it was unable to achieve these levels.

On April 14, 2004, Perry did indeed submit a bid package for the aforementioned project. This bid package did contain a MBE/WBE subcontractor and supplier solicitation and commitment form and a checklist related to this form. On this checklist, Perry acknowledged that its bid submission did not meet the MPL's set for the MBE's and WBE's on this project. Perry submitted a written explanation as to its failure to meet these MPL's, providing that not enough MBE's and WBE's bid the project and/or the bids received were not the low bidder. In addition, Perry noted in this explanation that "non M.B.E./ W.B.E. quotes will be provided upon request." (R.R. at 16a).

Perry's bid package was thereafter reviewed by the Bureau of Professional Selections and Administrative Services and the Bureau of Minority and Women Business Opportunities. DGS subsequently rejected Perry's bid as non-responsive. In a rejection letter to Perry, DGS explained that Perry had "failed to submit sufficient documentation to support its failure to respond to the participation levels for MBEs

and WBEs." (R.R. at 53a). Additionally, DGS explained that Perry "failed to meet the minimal solicitation requirements of five (5) eligible, certified MBEs for each discipline, subcontracting and supplies, and did not provide an explanation for the failure." *Id.* Further, DGS explained that Perry failed to explain why it did not use quotes from several MBE's and WBE's.[3]

Perry thereafter sent a protest letter to the Deputy Secretary of DGS contending that it solicited forty-seven proposals from certified MBE and WBE subcontractors and suppliers but was unable to include them all with its bid package because some were received just prior to the opening of the bids.[4] As to the minimum solicitation requirement, Perry contended that DGS failed to recognize that several of the MBE's and WBE's were qualified to perform different scopes of work and appeared in several different categories on the MBE/WBE subcontractor and supplier solicitation and commitment form. On these bases, Perry requested reconsideration of the rejection of its bid as non-responsive.

By letter dated May 26, 2004, Robert Glenn, Director of DGS' Bureau of Engineering and Architecture and the contracting officer for this project, responded to Perry's protest letter, recommending that the protest be denied. Mr. Glenn noted that Perry's MBE/WBE subcontractor and supplier solicitation and commitment form only identified twenty-one MBE/WBE firms, seventeen WBE's and only four MBE's. Mr. Glenn also noted that the instructions to bidders specified that all

provide evidence of credible attempts to meet the MPL's. . . . " (R.R. at 48a).

3. In the event that Perry refused to use these quotes because they were not competitive or not low enough, DGS noted that Perry was required to submit any lower quotes to justify said refusal.

4. Perry attempted to submit these proposals with its protest letter, along with other proposals/quotes to attempt to justify its refusal of certain MBE's and WBE's.

firms solicited must be included in the bid documents or the bid would be rejected as non-responsive.

As to the ability of one MBE or WBE to provide several different services and receive multiple credits, Mr. Glenn acknowledged that Perry was correct that one firm may provide more than one type of service. However, Mr. Glenn indicated that Perry still failed to solicit the required number of five MBE and WBE firms as per the instructions to bidders as well as the instructions for completion of the MBE/WBE subcontractor and supplier solicitation and commitment form. In other words, Mr. Glenn explained that "whatever number of categories any single MBE or WBE may be solicited for, it is a single entity." (R.R. at 72a).

Perry then filed a reply with the Deputy Secretary to the response of Mr. Glenn. Perry contended in this reply that Mr. Glenn admitted that it should receive multiple credits for one certified MBE or WBE.[5] Perry interprets Mr. Glenn's reasoning as requiring a bidder to solicit a total of twenty MBE/WBE firms, notwithstanding his admission that one firm may provide different services. Perry contended that "the more reasonable interpretation ... is that the five (5) MBE firms that are solicited for subcontract proposals may also be qualified to be solicited for supply proposals." (R.R. at 103a). Perry noted that neither instructions required each

firm to be treated as a single entity, as Mr. Glenn so indicated.[6]

Nevertheless, after reviewing the bid package, Perry's bid protest, the response of Mr. Glenn and the reply of Perry, by letter dated June 11, 2004, the Deputy Secretary for Public Works denied Perry's protest. The Deputy Secretary issued a decision supporting this denial wherein he found that Perry failed to meet the MPL of at least five eligible, certified MBE's for subcontract proposals and at least five eligible, certified MBE's for supply proposals. The Deputy Secretary noted that the instructions provided for the rejection of a bid as non-responsive if the bidder failed to submit all appropriate information related to MBE/WBE solicitations, quotes and commitments. Perry thereafter filed a petition for review with this Court.

■ On appeal,[7] Perry argues that the Deputy Secretary erred in denying its bid protest and rejecting its bid as non-responsive, as it solicited a sufficient number of MBE's and WBE's in accordance with the bid instructions as well as the instructions for completion of the MBE/WBE subcontractor and supplier solicitation and commitment form. We disagree.

Section 512(g) of the Commonwealth Procurement Code (the Code) provides that, within sixty days of the bid opening, the contract "shall be awarded ... to the lowest responsible bidder...." 62 Pa.C.S.

5. Mr. Glenn never admitted the above. Rather, Mr. Glenn merely admitted that one MBE/WBE firm may provide different types of service.

6. In this regard, Perry noted that it solicited nine eligible, certified MBE's and thirteen eligible, certified WBE's for subcontract proposals, and six eligible, certified MBE's and seventeen eligible, certified WBE's for supply proposals. However, in terms of Mr. Glenn's reasoning, the subcontract proposals included only three MBE firms and nine WBE firms,

whereas the supply proposals included only four MBE firms and eight WBE firms.

7. Our scope of review of the decision of the Deputy Secretary of DGS is limited to determining whether necessary findings of fact were supported by substantial evidence, whether errors of law were committed and whether Perry's constitutional rights were violated. *Cardiac Science, Inc. v. Department of General Services*, 808 A.2d 1029 (Pa.Cmwlth. 2002).

§ 512(g). Section 103 of the Code defines "responsible bidder" as a "bidder that has submitted a responsive bid and that possesses the capability to fully perform the contract requirements in all respects and the integrity and reliability to assure good faith performance." 62 Pa.C.S. § 103. This same section defines "responsive bid" as a "bid which conforms in all material respects to the requirements and criteria in the invitation for bids." *Id.*

■ These principles have been reaffirmed by the courts. *See, e.g., Gaeta v. Ridley School District,* 567 Pa. 500, 788 A.2d 363 (2002); *Cardiac Science.* Furthermore, the courts have routinely held that the requirements set forth in a bidding document are mandatory and must be strictly adhered to for the bid to be valid. *Gaeta; Fedorko Properties, Inc. v. Millcreek Township School District,* 755 A.2d 118 (Pa.Cmwlth.2000), *petition for allowance of appeal denied,* 565 Pa. 652, 771 A.2d 1289 (2001); *Smith v. Borough of East Stroudsburg,* 694 A.2d 19 (Pa. Cmwlth.1997), *petition for allowance of appeal denied,* 549 Pa. 731, 702 A.2d 1062 (1997).[8] As our Supreme Court stated in *Gaeta,* "variances from instructions and specifications in public works bidding are to be discouraged and, at a minimum, implicate the government's discretionary authority to reject a non-compliant bid." *Gaeta,* 567 Pa. at 511–512, 788 A.2d at 369.

In this case, as noted above, the notice to bidders contained instructions requiring all bidders to complete and submit a MBE/WBE subcontractor and supplier solicitation and commitment form indicating "all MBE's and WBE's that have been solicited, all quotes that have been received (*solicited and unsolicited*) and MBE's and WBE's to which commitments have been

made." (R.R. at 3a) (emphasis in original). Moreover, the instructions for this specific form provide, under a section entitled "Definition of Responsiveness," that a bidder will not be rejected as not responsive merely because it did not reach the required MPL's for MBE and WBE firms.

However, the bidder is required to provide evidence of "credible attempts to meet the MPL's" as well as a "written explanation explaining the failure" to meet the MPL's. (R.R. at 48a). These instructions also provide that the failure to include this written explanation with the bid "*will result in rejection of the bid.*" *Id.* As to the MPL's, and contrary to assertions by Perry, the instructions for this form are unambiguous, providing that in order to be considered responsive, a bidder "must solicit at least five (5) eligible, certified MBE's and five (5) eligible, certified WBE's for subcontract proposals and at least five (5) eligible, certified MBE's and five (5) eligible, certified WBE's for supply proposals." *Id.*

Perry does not dispute that it failed to meet the required number of MPL's for MBE's for both subcontracting work and supplies. Rather, Perry asks this Court to engage in an interpretation of the above language and conclude that one MBE that provides more than one type of service, be it as a subcontractor or supplier, may be counted more than once in the MBE category for that service. We decline to engage in such an interpretation. As DGS noted in its brief to this Court, the instructions cited above do not require a certain number of solicitations, but rather require solicitations from a certain number of business enterprises.

---

**8.** The courts have further held that the failure to follow the mandatory requirements in the bid instructions causes an award in a competitive bidding context to be overturned. *Gaeta; Fedorko; Smith.*

It is entirely possible that a business enterprise may qualify as both a MBE and WBE, but it is still only counted once in each category. For example, a single business enterprise could be solicited as both a subcontractor and a supplier. However, as far as meeting the MPL's, this business enterprise would only be counted as one eligible, certified MBE for subcontracting and one eligible, certified WBE for supply. Nothing in the instructions provides for the consideration of a single business enterprise, which received multiple solicitations in one particular category, as multiple business enterprises for purposes of meeting the MPL's.[9] Thus, we cannot say that the Deputy Secretary erred in denying Perry's bid protest and in rejecting its bid as non-responsive.

Next, Perry argues that the Deputy Secretary erred in denying its bid protest and rejecting its bid as non-responsive, as it submitted a written explanation regarding its failure to meet the MPL's in accordance with the aforementioned instructions. Again, we disagree.

As noted above, the instructions for the MBE/WBE subcontractor and supplier solicitation and commitment form require the submission of a written explanation explaining a bidder's failure to achieve the established MPL's. However, both these instructions and the original instructions in the notice to bidders require that such bidders submit information as to all quotes received, both solicited and unsolicited. The former also requires that where a quote from a MBE/WBE firm is rejected because a lower priced quote was received, the bidder "must submit a copy of the lower priced quote with its bid." (R.R. at 47a).

While Perry is correct that it did submit a written explanation regarding its failure to meet the required MPL's, this explanation merely states that not enough MBE's or WBE's bid this project and the MBE/WBE bids received were not the low bidder. However, Perry failed to submit any documentation in support of this explanation, i.e., documents related to these lower bids. Instead, Perry noted in its explanation that "non M.B.E./W.B.E. quotes will be provided upon request." (R.R. at 16a). DGS thereafter utilized its discretion in rejecting Perry's bid as non-responsive. We see no error on the part of DGS or the Deputy Secretary in this regard.

Accordingly, the decision of the Deputy Secretary for Public Works is hereby affirmed.

### ORDER

AND NOW, this 20th day of December, 2004, the decision of the Deputy Secretary for Public Works for the Department of General Services is hereby affirmed.

---

9. We note, as did DGS in its brief to this Court, that the spirit of the instructions favors such a result and supports the underlying bases for the issuance of Executive Order 1996–8 requiring MPL's for MBE's and WBE's.