**ALLAN A. MYERS, LP, Appellant**

v.

**MONTGOMERY COUNTY and Honorable James R. Matthews, Honorable Joseph M. Hoeffel, III and Honorable Bruce L. Castor Jr., acting as individuals in their capacity as Montgomery County Commissioners.**

Commonwealth Court of Pennsylvania.

Argued Feb. 11, 2014.
Decided May 20, 2014.

Paul A. Logan, King of Prussia, for appellant.

Philip W. Newcomer, Norristown, for appellees.

BEFORE: COHN JUBELIRER, Judge, and McCULLOUGH, Judge, and COLINS, Senior Judge.

OPINION BY Judge COHN JUBELIRER.

Allan A. Myers, LP (Myers) appeals from an Order of the Court of Common Pleas of Montgomery County (trial court)

sustaining Preliminary Objections (POs) and dismissing, with prejudice, Myers' Complaint against Montgomery County and Honorable James R. Matthews, Honorable Joseph M. Hoeffel, III and Honorable Bruce L. Castor Jr., acting as individuals in their capacity as Montgomery County Commissioners (Commissioners) (collectively, "the County"). On appeal, Myers argues that the trial court erred: (1) by concluding that the County did not enter into a binding contract with Myers; and (2) by going beyond the record evidence to consider facts, and circumstances, and drawing inferences therefrom in sustaining the POs. Because we conclude that the statutory requirements were not satisfied for the formation of a binding contract between Myers and the County, we hold that the trial court did not err by determining that Myers has not stated a claim for breach of contract. However, we also conclude that, at this preliminary stage, the trial court erred by dismissing Myers' Complaint in its entirety because Myers may be entitled to an award of damages for the costs incurred by Myers for procuring the required bonds when it was initially awarded the contract. Accordingly, we affirm, in part, reverse, in part, and remand this matter for further proceedings.

The County is a Second Class A county and is governed by The Second Class County Code (Second Class Code).[1] In 2011, the County issued a request for proposals (RFP) for a roadwork project. (Complaint ¶ 4.) Myers submitted a two-part bid (Schedules A and B) on June 23, 2011 in response to the RFP totaling $4,199,234.60. (Complaint ¶¶ 8–9; Complaint, Ex. B, R.R. at 22a.) The Proposal Form Signature Pages of the RFP provide that, "[i]n case this proposal is accepted,

1. Act of July 28, 1953, P.L. 723, *as amended,* 16 P.S. §§ 3101–6302.

the undersigned is hereby bound to enter into [a] contract within thirty (30) days after receipt of notice of acceptance of the above in accordance with the specifications." (Complaint, Ex. B, R.R. at 22a; Trial Ct. Op. at 4.) The signature page of the RFP, which was signed by Myers' president, provided:

> In case this proposal is accepted, the undersigned is hereby bound to commence and complete all of the work included under his contract in such time and such manner as designated for the various items he has contracted to supply.

> In submitting this proposal, it is understood that the unrestricted right is reserved by the County to reject any and all proposals or parts thereof, or to waive any informalities or technicalities in said proposals, and it is agreed that this proposal may not be withdrawn for a period of at least sixty (60) days from date of opening thereof.

(Complaint, Ex. B, R.R. at 23a; Trial Ct. Op. at 4.)

The bids were opened on June 23, 2011. (Complaint, Ex. C, R.R. at 61a.) The County's Commissioners accepted Myers' bid at a public meeting held on July 7, 2011 and adopted the following resolution (July Resolution):

> WHEREAS, Spec. # 6126, bids to provide the furnishing, delivering, all required materials and equipment, providing all labor, supervision and technical personnel, including utility and transportation services necessary for Milling and Resurfacing, were opened June 23, 2011, and were sent to seventeen (17) vendors and seven (7) vendors responded as in the attached; and

> WHEREAS, following the review and approval by the Solicitor, the bid of Joseph E. Sucher & Sons, Inc., of Eddystone, PA was withdrawn due to the unintentional omission of a substantial quantity of work, labor, material and services made directly in the compilation of the bid, and the bid of Highway Materials, Inc. of Blue Bell, PA was *rejected* due to non-compliance with the Specifications and it is the recommendation of the Director of Roads and Bridges to accept the bid of Allan A. Myers[,] L.P. of Worcester, PA (Schedule A–2011 paving estimated total lump sum $2,571,738.56 and Schedule B–2012 paving estimated total lump sum $1,627,496.04) for an estimated total lump sum price of $4,199,234.60, it being the lowest responsive estimated total lump sum price bid received in strict accordance with the specifications.

> NOW THEREFORE BE IT RESOLVED, following the review and approval by the Solicitor, the bid of Joseph E. Sucher & Sons, Inc., of Eddystone, PA was withdrawn due to the unintentional omission of a substantial quantity of work, labor, material and services made directly in the compilation of the bid, and the bid of Highway Materials, Inc. of Blue Bell, PA was *rejected* due to noncompliance with the Specifications and it is the recommendation of the Director of Roads and Bridges to accept the bid of Allan A. Myers[,] L.P. of Worcester, PA (Schedule A–2011 paving and Schedule B–2012 paving) for an estimated total lump sum price of $4,199,-234[.60,] it being the lowest bid received meeting the specifications and being within budgetary limitations. AND FURTHER, a notice to proceed for Schedule B will only be given if funds are budgeted in 2012, AND FURTHER, that the proper County officials are hereby authorized to prepare the necessary documents.

> AND FURTHER, should Allan A. Myers[,] L.P. of Worcester, PA fail to

post the required bonds for Schedule A in 2011 and for Schedule B in 2012, the acceptance of that bid and contract shall automatically be void.

(Complaint, Ex. C, R.R. at 61a (emphasis in original).) Following the July 7, 2011 public meeting, Myers took all steps requested by the County based upon Myers being awarded the contract and executed and returned to the County all the necessary documents and requested information. (Complaint ¶¶ 24–25.) This included furnishing the required bonds; insurances; allocating manpower, materials, equipment and resources to the project; and providing a bond as required by the County. (Complaint ¶¶ 52–54.)

Through its counsel, Myers sent a letter dated August 1, 2011 to the County solicitor advising that Myers understood that the County was considering objections by Highway Materials, Inc. (Highway) to the award of the contract to Myers. (Complaint ¶ 47, Ex. D, R.R. at 65a–68a; Trial Ct. Op. at 6.) Myers' counsel further informed the County solicitor that, under the law, a contract existed between Myers and the County for the project; therefore, Myers believed that there were no impediments to moving forward with the project. (Complaint ¶ 47, Ex. D, R.R. at 65a–68a; Trial Ct. Op. at 6.) On August 31, 2011, the County Commissioners adopted a resolution (August Resolution) stating as follows:

> **WHEREAS,** Resolution 11–C. 279, awarded Spec. # 6126 to Allan A. Myers, L.P. as set forth therein;
>
> **WHEREAS,** to provide for further consideration of the legal issues raised as to that action, and under applicable provisions of the Second Class County Code, the County deferred signing a contract;
>
> **WHEREAS,** upon completion of that review, it has been determined that the County should not have rejected the bid of Highway Materials, Inc., the second lowest bidder (the lowest bid having been properly rejected);
>
> **NOW THEREFORE BE IT RESOLVED** that the award of Spec # 6126 to Allan A. Myers, L.P. is hereby rescinded;
>
> **AND FURTHER, IT IS HEREBY RESOLVED** that the bid of Highway Materials, Inc. shall be accepted as to Schedule A–2011 paving and Schedule B–2012 paving for an estimated total lump sum price of $4,192,046.35, it being the lowest bid meeting the specifications and being within budgetary limitations.
>
> **AND FURTHER,** a notice to proceed for Schedule B will only be given if funds are budgeted;
>
> **AND FURTHER[,]** that the proper County officials are hereby authorized to prepare necessary documents.
>
> **AND FURTHER,** should Highway Materials, Inc. fail to post the required bonds for Schedule A in 2011 and for Schedule B in 2012, the acceptance of that bid and contract shall be automatically void.

(Memorandum of Law in Support of Myers' Replication to POs, Ex. 1, R.R. at 250a; Trial Ct. Op. at 8.)[2] The County allegedly has signed a contract with Highway to perform the roadwork project. (Complaint ¶ 36.)

On or about December 14, 2011, Myers filed a Complaint against Montgomery

---

**2.** The trial court noted that the August Resolution was not mentioned in Myers' Complaint or attached thereto; however, the August Resolution was attached by Myers to its Memorandum of Law in support of Myers'

"Replication" to POs. The trial court took judicial notice of the August Resolution as an undisputed action of the Commissioners under Rule 201 of the Pennsylvania Rules of Evidence, Pa.R.E. 201. (Trial Ct. Op. at 7.)

County and the Commissioners, who were in office at the time the contract was awarded to Myers and then rescinded, seeking damages based upon the County's violation of the Commonwealth Procurement Code[3] (Procurement Code) and for breach of contract.[4] Myers alleges, *inter alia,* that a contract was formed on July 7, 2011 when the Commissioners accepted its bid and awarded it the contract for the roadwork project. (Complaint ¶¶ 17–29.) Myers alleges further that it took all steps requested by the County and executed and returned to the County all documents and information requested regarding the roadwork project; however, the "County and the Commissioners thereafter refused to sign the contract for this project with Myers." (Complaint ¶¶ 23–24, 26.)

The County filed POs alleging that the Complaint fails to state a claim for breach of contract or for a violation of the Procurement Code. The County averred that: (1) Myers failed to allege the existence of an enforceable written and signed contract with the County; (2) if such a contract exists, Myers would be required to attach it to its Complaint; and (3) the Procurement Code is not applicable because the bidding and contracting process at issue is governed by the Second Class Code. The County also objected to the Complaint on the basis that the Commissioners are not proper parties because it is Montgomery County that has the corporate power to sue and be sued in its own name under Section 202 of the Second Class Code, 16 P.S. § 3202.

By Order dated January 2, 2013, the trial court sustained the POs and dismissed the Complaint with prejudice. In a lengthy opinion in support of its Order, the trial court found, as a matter of law, that "the mere act of *awarding* a public contract normally creates no binding obligation on the awarding entity without the proper contracting authorities[ ] going further and formally 'entering into' and 'executing' the contract." (Trial Ct. Op. at 16 (emphasis in original).) Thus, the trial court determined that Myers could not recover damages because, although the Commissioners awarded Myers the contract via the July Resolution, the contractual documents were not executed or signed by the Commissioners; therefore, no enforceable contract existed between Myers and the County. This appeal followed.[5]

3. 62 Pa.C.S. §§ 101–4604.

4. Myers also alleges that the County is liable for interest at the legal rate of interest, plus a penalty at the rate of 1% per month, plus attorneys' fees pursuant to Section 3935 of the Procurement Code, 62 Pa.C.S. § 3935, and Section 12 of the Contractor and Subcontractor Payment Act, Act of February 17, 1994, P.L. 73, 73 P.S. § 512.

5. This Court's review of a trial court's order sustaining preliminary objections in the nature of a demurrer is limited to considering whether the trial court erred as a matter of law or abused its discretion. *Braun v. Borough of Millersburg,* 44 A.3d 1213, 1215 n. 3 (Pa.Cmwlth.), *petition for allowance of appeal denied,* 618 Pa. 672, 55 A.3d 525 (2012). In ruling on preliminary objections, courts must accept as true all well-pleaded material allegations in a complaint and any reasonable inferences that may be drawn from the averments. *Meier v. Maleski,* 167 Pa.Cmwlth. 458, 648 A.2d 595, 600 (1994). Courts, however, are not bound by legal conclusions encompassed in a complaint, unwarranted inferences from facts, argumentative allegations, or expressions of opinion. *Id.* Courts may sustain preliminary objections only when the law makes clear that the plaintiff cannot succeed on his claim, and any doubts must be resolved in favor of the plaintiff. *Id.* Courts review preliminary objections in the nature of a demurrer under these guidelines and may sustain a demurrer only when a plaintiff fails to state a claim for which relief may be granted. *Clark v. Beard,* 918 A.2d 155, 158 n. 4 (Pa.Cmwlth.2007).

In support of this appeal Myers argues that, pursuant to the basic concepts governing public contracts, an enforceable contract was formed when the Commissioners adopted the July Resolution accepting Myers' bid and awarding Myers a contract for a roadwork project. Myers argues further that the Second Class Code does not require that a contract be executed in order to be a binding enforceable contract.

■ It is well-settled that " 'where a statute prescribes the formal mode of making public contracts it must be observed; otherwise they cannot be enforced against the governmental agency involved.' " *Perry v. Tioga County*, 694 A.2d 1176, 1178 (Pa.Cmwlth.1997) (quoting *Luzerne Township v. Fayette County*, 330 Pa. 247, 199 A. 327, 330 (1938)). Section 503 of the Second Class Code provides as follows:

Quorum; execution of official instruments

(a) The commissioners shall constitute a board, two members of which shall be a quorum for the transaction of business, and when convened in pursuance of notice or according to adjournment shall be competent to perform all the duties appertaining to the office of county commissioners.

(b) Where any official document, instrument or official paper is to be executed by the county commissioners, it shall be done by at least two of the commissioners and attested by the chief clerk who shall affix the county seal thereto.

16 P.S. § 3503. Section 2001 of the Second Class Code, governing county commissioners' authority to make contracts, provides, in pertinent part as follows:

The County Commissioners may make contracts for lawful purposes and for the purposes of carrying into execution the provisions of this section and the laws of the Commonwealth.

(a) Except as provided in subsection (a.1), all contracts or purchases in excess of the base amount of eighteen thousand five hundred dollars ($18,500), subject to adjustment under section 112, **shall be in writing** and, except those hereinafter mentioned and except as provided by the act of October 27, 1979 (P.L. 241, No. 78), entitled "An act authorizing political subdivisions, municipality authorities and transportation authorities to enter into contracts for the purchase of goods and the sale of real and personal property where no bids are received," shall not be made except with and from the lowest responsible and responsive bidder meeting specifications, after due notice in at least one newspaper of general circulation, published or circulating in the county at least two (2) times, at intervals of not less than three (3) days where daily newspapers of general circulation are employed for such publication, or in case weekly newspapers are employed, then the notice shall be published once a week for two (2) successive weeks. The first advertisement shall be published not less than ten (10) days prior to the date fixed for the opening of bids.

(a.1) The requirements of this subsection need not be followed in cases of emergency, but in such cases the actual emergency shall be declared and stated by resolution of the commissioners.

(b) The acceptance of all bids shall be by the controller. They shall be opened publicly at a time and place to be designated in the notice. All the figures shall be announced publicly by the chief clerk or his designee and referred to the appropriate departments for tabulation without the presence of the commissioners. Whenever, for any reason, the bid openings shall not be held, the same

business may be transacted at a subsequent meeting, the time and place of which shall have been announced at the previous meeting held for such openings. The contract shall be awarded or all bids shall be rejected within thirty (30) days of the opening of the bids, except for bids subject to 62 Pa.C.S. (relating to procurement). Thirty-day extensions of the date for the award may be made by the mutual written consent of the commissioners and any bidder who wishes to remain under consideration for the award. The commissioners shall excuse from consideration any bidder not wishing to agree to a request for extension of the date for the award and shall release such bidder from any bid bond or similar bid security furnished under subsection (b.1). **All contracts shall be filed with the controller or with the chief clerk, as the case may be, immediately after their execution.**

16 P.S. § 5001(a), (a.1), (b) (emphasis added).

Myers does not dispute the requirement set forth in Section 2001(a) of the Second Class Code that a contract must be in writing. Myers argues that, because Section 2001(a) of the Second Class Code does not expressly mandate that execution of a contract is a prerequisite to formation, the contract was formed when the contract was awarded. Section 2001(a) only requires that certain contracts be in writing; therefore, Section 2001(a) empowered the Commissioners to enter into the subject contract on July 7, 2011, so long as the contract was in writing. Myers argues that the July Resolution specifically refers to the writings that constitute the terms of the contract and nothing in the July Resolution conditions the formal acceptance of the contract or award thereof upon the Commissioners' execution of the bidding

documents. In addition, Section 503 of the Second Class Code does not mandate that contracts must be executed in order to be legally binding—this section merely prescribes the procedural requirements when an official document is required to be executed. Myers contends that the trial court erroneously imported the ministerial requirements of Section 503 to expand the requirements of Section 2001 beyond the simple requirement that a contract must be in writing.

Myers argues further that our Supreme Court's decision in *Shovel Transfer v. Pennsylvania Liquor Control Board*, 559 Pa. 56, 739 A.2d 133 (1999), is applicable to this case. There, the Supreme Court found that the parties intended to be bound by a contract even though the Commonwealth's Budget Secretary and the Liquor Control Board's Comptroller refused to sign the contract. The Supreme Court determined that the Liquor Code[6] required only that the Liquor Control Board manifest approval of a contract via formal action at a public meeting. Myers contends that this is what occurred here. Thus, Myers asserts that the lack of the Commissioners' signatures on any document does not negate the existence of a contract or thwart Myers' right to contractual damages due to the County's breach.

■ "As a general rule, signatures are not required unless such signing is expressly required by law or by the intent of the parties." *Shovel Transfer*, 739 A.2d at 136; *Department of General Services v. On–Point Technology Systems, Inc.*, 821 A.2d 641, 647–48 (Pa.Cmwlth.2003). Reading Section 2001 in its entirety with Section 503 of the Second Class Code, we conclude that, in order for an enforceable contract to be formed, the Second Class

---

6. Act of April 12, 1951, P.L. 90, *as amended*, 47 P.S. §§ 1–101–10–1001.

Code requires that the contract must be executed by the Commissioners.

Pursuant to Section 503, at least two of the Commissioners must execute an official document or instrument. 16 P.S. § 3503. A written contract is an official document or instrument of the County.[7] Section 2001(b) requires that written contracts entered into pursuant to Section 2001(a) "shall be filed with the controller or with the chief clerk, as the case may be, immediately after their execution." 16 P.S. § 5001(b). This mandatory language manifests an intention on the part of the General Assembly that a written contract formed pursuant to the Second Class Code must be formally executed by a county's commissioners. In addition, the provisions of the Procurement Code buttress our holding that the Commissioners were required to execute any contract between Myers and the County for the roadwork project as a prerequisite to the formation of a contract. Specifically, Section 3912 of the Procurement Code provides that, "[i]n the case of a contract entered into by a government agency through competitive sealed bidding, **the contract shall be executed by the government agency** within 60 days of the date that the contract is awarded." 62 Pa.C.S. § 3912 (emphasis added).

*Shovel Transfer* does not mandate a different conclusion. In *Shovel Transfer*, the Supreme Court held that there was no statutory requirement in the Liquor Code mandating that certain Commonwealth officials sign a contract for the purchase of a warehouse to be used as a distribution facility for the Liquor Control Board.

*Shovel Transfer*, 739 A.2d at 136–37. It was sufficient that the contract was signed by the Chairman of the Liquor Control Board and the Attorney General as permitted by the governing regulations. Because the disputed signatures were not statutorily required, the Supreme Court then reviewed whether the parties intended that a contract would not exist until all the signatures were affixed. Upon review, the Supreme Court held that "the evidence support[ed] a finding that the parties intended to be bound under the terms of the contract regardless of the execution of all signatories." *Id.* at 138. Unlike the instant matter, in *Shovel Transfer* there was a signed contract and the issue addressed by the Supreme Court was whether additional signatures were required in order for the parties to be bound by the contract. Here, there is no signed contract and, as we have held, the Commissioners' signatures are statutorily required by the Second Class Code. Thus, in the absence of a signed contract, *Shovel Transfer* does not apply.

We find our Supreme Court's decision in *Crouse, Inc. v. School District of Braddock*, 341 Pa. 497, 19 A.2d 843 (1941), more instructive on the issue of whether the alleged contract between the County and Myers had to be executed before a contract was formed. In *Crouse*, the school district advertised for bids for plumbing and heating work on a proposed new school building. Crouse submitted the lowest bid and the school district awarded Crouse the contract by motion during a school board meeting. The school district verbally notified Crouse to execute the

---

7. *See Perry*, 694 A.2d at 1178 (indicating that a contract was an official document, instrument or official paper of Tioga County by dismissing former employee's complaint for breach of contract because, pursuant to Section 504(b) of The County Code, Act of August 9, 1955, P.L. 323, *as amended*, 16 P.S.

§ 504(b), at least two of the county commissioners were required to execute official documents, instruments, or official papers, and none of the commissioners signed the agreement purporting to settle the former employee's claims against Tioga County for wrongful discharge).

prepared written contracts, secure materials and manpower, and obtain the performance bonds. Crouse complied; however, the local plumbers' union protested the award. At the next regularly scheduled meeting of the school board, the directors, by motion, rescinded the award of the plumbing contract to Crouse because it was not the lowest responsible bidder. By the same motion, the directors awarded the contract to the next lowest bidder. The school district notified Crouse of the rescission, and Crouse filed an action against the school district for breach of contract.

Although Crouse admitted that there was no formal written contract executed by the school district, it contended that the motion awarding the plumbing contract sufficiently established a contract between it and the school district because the form of the contract was attached to the bid documents. A jury found in favor of the school district, and Crouse appealed. Our Supreme Court held that the statutory requirements of the former Public School Code [8] required that the acceptance of the bid for the plumbing contract required formal execution of a written contract before a contract was formed. *Crouse*, 19 A.2d at 844. The Supreme Court reasoned that:

> When a municipal body advertises for bids for public work and receives what appears to be a satisfactory bid, it is within the contemplation of both bidder and acceptor that *no contractual relation shall arise therefrom until a written contract embodying all material terms of the offer and acceptance has been formally entered into.* The motion whose adoption is evidenced by the minutes of the school district in the instant case meant merely that the proposal was accepted subject to the preparation and execution of a formal contract or subject to the motion being rescinded before the contract was executed. A preliminary declaration of intention to enter into a formal contract, which was all the motion adopted amounted to, did not in any way limit the school directors' freedom of future action.

*Id.* at 844 (emphasis added). *See also City of Philadelphia v. Canteen Company, Division of TW Services, Inc.*, 135 Pa. Cmwlth. 575, 581 A.2d 1009, 1012 (1990) (holding, pursuant to *Crouse*, that the City of Philadelphia was not bound by its acceptance of a bid until a contract was approved and executed in accordance with the home rule charter; therefore, the city could withdraw the award of a contract without liability).

The facts in *Crouse* are similar to the allegations in Myers' Complaint. The Commissioners awarded the contract to Myers via the July Resolution, which meant that Myers' bid was accepted subject to the preparation and execution of the formal contract. This intention is supported by the language of the July Resolution where the Commissioners authorized the preparation of the necessary documents and by the absence of any allegations showing that an executed contract exists. As stated previously, Myers specifically alleges that the Commissioners refused to sign the alleged contract. (Complaint ¶ 26.)

■ Accordingly, because the formal mode of making a public contract set forth in the Second Class Code was not complied with in this case, there is no contract that can be enforced against the County. The foregoing conclusion, however, does not

---

8. Act of May 18, 1911, P.L. 309, *formerly* 24 P.S. §§ 1–27, repealed by the Act of March 10, 1949, P.L. 30.

end this matter given the unique set of facts presented here. It is undisputed that Myers' bid was accepted and it was awarded the contract for the road work project by the July Resolution. Notwithstanding that the award was rescinded by the August Resolution, Myers was the successful bidder as of July 7, 2011 until the rescission of the award on August 31, 2011. The July Resolution provided that if Myers, as the successful bidder, failed to post the required bonds for the roadwork project, the bid and the contract would be void. (Complaint, Ex. C, R.R. at 61a.) The authority for this provision of the July Resolution is found in the Second Class Code which mandates that a successful bidder furnish a bond.

Section 2001(c) of the Second Class Code, provides, in pertinent part, that "[t]he successful bidder, when a formal bid is required herein, shall be required to furnish a bond ... in an amount sufficient to the commissioners guaranteeing performance of the contract within thirty (30) days after the contract has been awarded...." 16 P.S. § 5001(c). Section 2001(c) further provides that security for a contract involving, *inter alia,* construction or improvement of any kind, shall be furnished as provided in Section 2518 of the Second Class Code, 16 P.S. § 5518, and that "[u]pon failure to furnish any required bond within such time, the previous awards shall be void and the commissioners may award the contract to the next lowest bidder." 16 P.S. § 5001(c). Section 2518(e) of the Second Class Code provides, in pertinent part, that a successful bidder who has been awarded a construction contract in an amount in excess of $100,000 shall furnish performance and

payment bonds. 16 P.S. § 5518(e). As stated previously, the July Resolution provided that Myers' failure to post the required bonds for Schedule A in 2011 and for Schedule B in 2012 would result in the automatic voidance of the acceptance of Myers' bid and the contract. (Complaint, Ex. C, R.R. at 61a.)

Myers alleges in its Complaint that "[f]ollowing the [July 7, 2011] public meeting ... Myers executed and returned to [the County] all documents and information requested by [the County] regarding [the roadwork project]." (Complaint ¶ 24.) The County does not dispute this allegation and accepts it as true in its POs to the Complaint. (POs ¶ 4.) Myers alleges further in its Complaint that it began performance of the contract by furnishing bonds and that it "provided a bond as required by [the County]." (Complaint ¶¶ 52, 54.) Myers alleges that the procurement of such bond impaired its "ability to seek or to secure other contracts and work which required bonds." (Complaint ¶ 55.) Moreover, when asked by this Court at oral argument if Myers had posted a performance bond, as alleged in its Complaint, counsel for Myers answered in the affirmative and counsel for the County agreed that Myers had posted the required bond. Accordingly, at this preliminary stage, we cannot hold that Myers will not be able to prove a claim for damages for the costs related to procuring the required bonds under a non-contractual theory of recovery. As such, we must reverse that portion of the trial court's Order dismissing Myers' Complaint, with prejudice, and remand this matter for reinstatement of Myers' claim for damages related to procuring the required bonds.[9]

---

9. Our holding should not be interpreted as bestowing upon Myers the opportunity to seek damages for any expenses related to procuring the required bonds in connection with its

bid as these expenses would have been incurred by all the bidders. *See J.P. Mascaro & Sons, Inc. v. Bristol Township,* 95 Pa.Cmwlth. 376, 505 A.2d 1071, 1073 (1986) (a disap-

For the foregoing reasons, the trial court's Order is affirmed, in part, and reversed, in part, and this matter is remanded for reinstatement of Myers' claim for damages related to procuring the required bonds.[10]

### ORDER

**NOW,** May 20, 2014, the Order of the Court of Common Pleas of Montgomery County entered in the above-captioned matter is **AFFIRMED,** in part, and **REVERSED,** in part, and this matter is **REMANDED** for reinstatement of the claim by Allan A. Myers, LP, for damages related to the procurement of the required bonds.

Jurisdiction relinquished.

pointed bidder has sustained no injury which entitles him to redress in court).

10. Due to our resolution, we need not address the other arguments raised by Myers in this appeal in support of the first issue raised nor do we need to address the second issued raised by Myers; specifically, whether the trial court erred when it sustained the POs by considering facts or evidence dehors the record as part of its deliberations and decision.